## LANDHAM et al. v. GALBREATH et al.

### No. 22422.   Nov. 13, 1934.

Barrett & Dickson, for plaintiffs in error.

J. Q. Adamson, for defendants in error.

McNEILL, J.  This cause was revived in this court on October 18, 1932, as to plaintiff in error, F. M. Landham, deceased, in the names of Henry Landham, Montie Galbreath, Sallie Moore, Tom Ray Martin, Jocie Mae Parsons, and Sarah Maude Martin, heirs of F. M. Landham, deceased.

This action involves the cancellation of a deed which was alleged to have been procured in furtherance of a conspiracy to cheat and defraud the plaintiff in error out of a tract of land comprising 320 acres, situated in Choctaw county, Okla.

Plaintiff in error (referred to hereinafter as plaintiff) alleged that he was the legal and equitable owner in fee simple to said real estate and that the defendants, T. A. Galbreath, J. W. Thompson, and A. B. Tumblin, and each of them, were claiming some right, title, and interest in and to the same, and prayed that his title be quieted free and clear of the claims of said defendants.

The defendants answered, setting up the fact that on May 16, 1929, said plaintiff sold and conveyed said premises by warranty deed to the defendants Galbreath and Thompson; on May 20, 1929, the said Galbreath and Thompson sold and conveyed the same by warranty deed to A. B. Tumblin; and that thereafter said Tumblin executed a mortgage in favor of said Galbreath and Thompson as part of the purchase price of said land, and prayed that the title of said land be quieted in Tumblin.

To this answer the plaintiff filed a reply, setting forth that he was 81 years of age on May 16, 1929, and at said time was conducting a small country store; that for sometime prior thereto he had transacted considerable mercantile business with Marks Brothers in Sherman, Tex.; that Marks Brothers had accumulated a large amount of merchandise which had become out of date, and unsuitable for mercantile purposes, and the defendants, Galbreath, Thompson, and Tumblin, conspired with Marks Brothers and others for the purpose of palming said damaged goods off on plaintiff, and for the purpose of cheating and defrauding plaintiff out of his real estate said defendants sought to obtain an exchange of said stock of goods for said real estate; that plaintiff by appointment met said Galbreath and F. M. McFatridge in the store of Marks Brothers in Sherman, where he learned that said merchandise had been packed in boxes and stored away; that plaintiff requested that the merchandise be taken out of the boxes to the light where he might inspect the same, but that this request was refused; that he was told by the defendant Galbreath that the merchandise was worth the sum of $12,000, and to satisfy the plaintiff of the character and value of said merchandise said Galbreath called upon one of the Marks Brothers, who informed plaintiff that he knew said boxes contained fresh articles of merchandise which were worth at least the sum of $7,200.

Plaintiff further alleged concerning said conspiracy that Galbreath, in order to induce plaintiff to take said merchandise without further inspection, proposed to add thereto another smaller stock of goods and persuaded plaintiff to execute his deed to said real estate, which was to be left with Galbreath, and said plaintiff was to take said merchandise to his store at Dodge City, Tex., for inspection and to return the same to plaintiff in the event said plaintiff was not satisfied with said inspection.  Plain-

tiff also alleged that he relied upon the statements and representations of said parties as to the condition and value of said merchandise and the agreement of said Galbreath to withhold the deed from record and return the same to plaintiff in the event said plaintiff was not satisfied with said goods; that, relying upon these statements, representations, and agreements, he executed said deed and delivered the same in escrow to said defendant Galbreath and thereafter took said merchandise to Dodge City for inspection.

Plaintiff further alleged that upon inspection of said merchandise at Dodge City the same was found to be old, out of date, out of style, shelf-worn, and water circled, damaged and unsuitable for mercantile purposes; that he notified said Galbreath and Thompson of this fact, and offered to return said merchandise and demanded the return of said deed, but that said defendants Galbreath and Thompson in furtherance of said conspiracy to cheat and defraud said plaintiff had unlawfully, wrongfully, and fraudulently transferred said land by warranty deed to the defendant Tumblin on May 20, 1929, in violation of plaintiff's rights and his agreement with said Galbreath.

Plaintiff prayed for the cancellation of said deed, and that his title and possession in said real estate be quieted as against said defendants.

The parties waived a trial by jury and submitted the issues to the court. The court entered judgment decreeing the defendant Tumblin was the legal and equitable owner of said real estate and quieted the title to said premises in and to said defendant. It is urged on this appeal that the court erred in eliminating the issues joined by the pleadings, to wit, conspiracy, fraud, and inadequacy of consideration, and confined the issues in the trial to the question of a contract which was not joined in the pleadings nor contemplated by the parties, and that the court erred in refusing to admit legal and competent evidence of conspiracy, fraud, and inadequacy of consideration; also that the court erred in failing and refusing to render judgment for the plaintiff in error on the preponderance of the evidence pertaining to the question of the delivery of the deed.

The court stated the issues in the case as follows:

"If this man took the goods and was to inspect them, if he executed the deed and left it with this man and it was not to be delivered until he was satisfied with the goods, and if he was not satisfied that was not to be any trade, and if these are the facts, of course, he is entitled to recover; otherwise, I don't think so, from your statement. The only thing as I see it is when he had an opportunity to examine the goods, it does not make any difference whether they were old or new if he was satisfied, it was a trade. If he decided he didn't like the goods, he didn't have to trade. If he turned them down for any reason whatever it would be sufficient. I think the only thing under your pleadings is whether or not he took the goods for the purpose of examination with the understanding that the deed was to be delivered if the goods suited; if not, there would be no delivery. I am of the opinion, gentlemen, that under your statement to the court and under your pleadings, the only thing necessary to prove in this case, the only issue, which will be a legal issue, is whether or not they let him have these goods for the purpose of examination with the understanding that if he was satisfied with the goods, then it was to be a trade. If he was not satisfied with the goods, then it was to be delivered to him. Did they make the trade that he was to examine the goods, and if he was satisfied with them, it was a trade?"

It appears that plaintiff, F. M. Landham, owned the land in controversy and that J. W. Thompson owned the stock of goods situated in Marks Brothers' store in Sherman, Tex.; that T. A. Galbreath was the owner of a stock of goods which was located in his home in Sherman, Tex.; that Marks Brothers had sold the stock of goods in question to Thompson and Thompson had left the same in the basement of Marks Brothers' store; that plaintiff after some negotiations came to Sherman, Tex., to investigate the stock of goods belonging to Thompson, and in company with Galbreath, McFatrich, and Abe Marks, of Marks Brothers, went to the basement of the store of Marks Brothers where the stock of goods was situated and made some investigation of the same. These goods were packed in boxes and some of them were opened at the request of plaintiff in the basement. Plaintiff contends that he requested that the goods be removed to some other place where he could see them, but this was not done. The trade was not consummated at this time, and plaintiff left Sherman and returned to his home. Subsequently another proposition was made through Mr. Galbreath in reference to trading the land in controversy for the stock of goods, if Galbreath would give to the plaintiff $1,000. This agreement was not consummated. Subsequently, plaintiff returned to Sherman and examined a small stock of goods at the home of Galbreath. After making an examination an agreement

was entered into between plaintiff and Galbreath.

Plaintiff also contends that he was to take the stock of goods at the residence of Galbreath and the goods at Marks Brothers to his home and inspect them; that if he was satisfied with the goods, and if they were as represented to him by Abe Marks as being worth $7,200, he would make the trade and defendants were to receive the deed to the land which he had signed and acknowledged before a notary public; that he left the deed with them for delivery in the event he was satisfied with the goods.

On the other hand, the defendants contend that the deed was delivered to them as a consideration for the stock of goods; that plaintiff had satisfied himself in reference to said goods and that the deed was not executed with the understanding that the deed was to be delivered if the goods were satisfactory to the plaintiff.

The issue as tried by the court appears to have narrowed itself to the question as to whether or not there was a conditional sale. The evidence on this question is conflicting. Plaintiff testified that the deed was not to be delivered until he satisfied himself that the goods were as represented to him as being worth at least $7,200 by Abe Marks. There is other testimony to the effect that Mr. Galbreath guaranteed the goods to be just what Marks said they were, and that, if plaintiff did not find the stock of goods to be that way, Galbreath would take the goods back and deliver to plaintiff the deed to the land. The testimony of the defendants denies these facts. The witness Abe Marks specifically denies that he informed the plaintiff that the goods were ever worth $7,200.

The trial court heard the various witnesses and found the issues in favor of the defendants. The action is equitable, and unless the judgment of the trial court is clearly against the weight of the evidence, this court will not disturb the same. In the findings made by the trial court it was stated that the testimony was not sufficient "to meet that standard that the court requires to show that it was a conditional delivery of the deed." The court took the view that the fraud practiced upon the defendant was whether or not the defendants guaranteed this stock of goods to be of a certain price and of certain value, and if the goods were not as represented, that the defendant would deed the land back to plaintiff. The court further found that the evidence of plaintiff was not sufficient to establish this nature of fraud, and that there was no evidence of unlawful conspiracy.

There are evidence and circumstances tending to prove the contentions of plaintiff. On the other hand, there is ample evidence to support the defense of defendants. The evidence being conflicting, we cannot say from a review of the record that the judgment of the trial court is against the clear weight of the evidence.

Judgment affirmed.

RILEY, C. J., and ANDREWS, OSBORN, and BAYLESS, JJ., concur. CULLISON, V. C. J., and SWINDALL, BUSBY, and WELCH, JJ., absent.