KOLLMAN v. PFENNING.

No. 31913. Sept. 25, 1945.

Rehearing Denied Nov. 27, 1945.

*163 P. 2d 534.*

Hughes & Hughes, of Hobart, for plaintiff in error.

Clayton Carder, of Hobart, for defendant in error.

PER CURIAM. This is an appeal from a judgment of the district court of Kiowa county by plaintiff, Thomas D. Kollman, denying him a mandatory injunction against defendant, Sam Pfenning, requiring him to remove certain artificial dams and to fill up certain ditches which it is alleged interfered with the natural flow of a certain watercourse in times of flood and which diverted said water in and upon the land of plaintiff, thereby greatly damaging the same.

Petition of plaintiff sets forth two causes of action, the first seeking a mandatory injunction as above detailed, and the second for damages to the land and for destruction of crops growing thereon for the years 1941 and 1942. The

second cause of action was tried to a jury, which resulted in a small verdict and judgment in favor of plaintiff. No appeal has been taken from the judgment as to this cause of action. The appeal is only prosecuted from the order of the trial court as to the first cause of action denying the mandatory injunction.

The evidence discloses that plaintiff is the owner of the southwest quarter of section 35, township 7 north, range 17 west, in Kiowa county, and that the defendant is the owner of the southeast quarter. The northern part of plaintiff's land, approximately 35 acres, a strip running east and west on the north side, constitutes his pasture land, the south part constitutes the cultivated land. The topography of the land lying north of the farms of both parties slopes upward for considerable distance. To the north there is a large watershed which slopes downward to both the west and the east to a ravine on either side of the watershed, one running in a northeasterly direction and the other in a northwesterly direction and across the northeast corner of plaintiff's land, which ravines come together and form a junction immediately north and east of the northeast corner of the land of plaintiff and originally carried the water in a well defined channel across the land of defendant.

Defendant, about ten years ago, erected a dam or dyke across the ravine upon his land south and east of the point where the streams running through the ravine form a junction and constructed a ditch on his land close to the east boundary line of plaintiff's land beginning at a point east of the northeast corner thereof, thence running south along said east boundary line a distance of two-thirds of the length of the east boundary line of said quarter section, thence east over and across the land of the defendant.

Defendant by the erection of this dam and ditch diverted the water from its natural course flowing upon his lands into the ditch and conveyed it south through such ditch for the distance above stated, thence east over his land, where it was discharged in a bar pit.

Near the southeast corner of plaintiff's land there is a depression sloping toward the east of defendant's land where surface waters, in times of ordinary floods, flow from plaintiff's lands onto the lands of the defendant. A dam or dyke was erected by defendant and a ditch was constructed by him near the southwest corner of his land which diverted the flow of the water from its natural course on his land into this ditch and conveyed it through the ditch to the section line, where it was discharged into a bar pit.

It is the theory of plaintiff, and he attempted to prove that these ditches as constructed were insufficient to carry off the water accumulated therein; that they overflowed and caused the water to run back over and across his land and washed great ditches in his land and thus destroyed a portion thereof. Plaintiff, however, admits that the construction of the ditches caused no material damage to the northern part of his land which constituted his pasture land.

The evidence is conclusive that the ditch constructed by defendant, which is an independent ditch from the ditch first above described near the southwest corner of his land, caused no damage to plaintiff's land. The proof, however, shows that some damage was caused to plaintiff's land along the east boundary line of his cultivated land near the center thereof measuring north and south. The evidence shows that at this point there was a flaking away or caving in of the west bank of the ditch to such an extent that it destroyed approximately one-half acre of plaintiff's land. There is no dispute in the evidence as to the destruction of the one-half acre. The only dispute arising between the parties is as to the probable future damage likely to result by reason of the caving in of the ditch. There is some conflict in the evidence as to this issue. Ray Stanley, an engineer, however, testified that the damage to plaintiff's land at this point oc-

curred by the caving in of the west bank of the ditch and the undermining of the ditch at the bottom, and that unless something was done to prevent a further caving in and undermining it would likely cause a further erosion of plaintiff's land and might eventually extend some distance into the field. He further testified that this condition could be prevented by placing retards in the ditch which should be constructed of cement or masonry and by sloping the ditch down to the retards; that it would take about five retards to accomplish this purpose; that such retards would cost about $25 each; that if this were done it would prevent any further erosion or damage to plaintiff's land, and that such improvements could be made in the ditch at moderate cost. Defendant in his evidence admitted that the caving in of the ditch at the point mentioned caused plaintiff some damage and such caving in of the ditch destroyed a small portion of his land; that he was willing and ready to pay any damage that plaintiff may have suffered thereby and that he was willing to and would do anything any reputable engineer might recommend to avoid and prevent further damage; that it would entail considerable expense to remove the dams and fill the ditches and would cause the destruction of most of his cultivated land; that he erected the ditches under the supervision of an engineer and was advised at that time by such engineer that the construction thereof could in no manner injure plaintiff; that he stands ready and willing to do anything within reason necessary to prevent further damage to the plaintiff.

The trial court, after considering and weighing all the evidence, came to the conclusion that no necessity existed requiring the granting of a mandatory injunction. The judgment, however, provides that the refusal of the injunction shall not operate to bar an action for any damages which may in the future be sustained by plaintiff by reason of the maintenance of the ditches, dams, and dykes.

There is no dispute between the parties as to the legal principles applicable. Their only dispute is as to the kind and character of judgment which should be rendered under the evidence. It is contention of the plaintiff that complete relief can only be granted him by requiring defendant to remove the dams and fill the ditches; that unless such relief be granted he will suffer extensive future damages to his land, and that the judgment of the trial court refusing to grant the mandatory injunction is clearly against the weight of the evidence. We do not agree. The trial court, in our opinion, reached the correct conclusion.

The judgment is affirmed.

HURST, V.C.J., and RILEY, OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur.