# SWISHER et al. v. CLARK.

No. 33226.  June 28, 1949.

Rehearing Denied Sept. 20, 1949.

*209 P. 2d 880.*

Homer Caldwell, John Caldwell, and Clay Roper, all of Oklahoma City, for plaintiffs in error.

V. P. Crowe and Embry, Johnson, Crowe, Tolbert & Shelton, all of Oklahoma City, for defendant in error.

HALLEY, J. Mae T. Swisher, one of the defendants below, was the record owner of lots 21 & 22 and the south 10' of lot 20, blk. 8, Dale Addition to Oklahoma City, otherwise known as the Mayfair Apartments. On April 15, 1946, she entered into a contract with Anson L. Clark, by which she agreed to sell to Clark the foregoing real estate, together with all improvements thereon and all furnishings of every kind and description, for the sum of $90,000— $5,000 being paid at the time of the signing of the contract, $10,000 to be paid at the delivery of the deed, and the remainder of $75,000 to be evidenced by note and secured by purchase-money mortgage, to be paid at the rate of $1,000 per month, beginning 30 days after the first of the month following closing of the transaction, and to bear interest at the rate of 4% per annum. Mrs. Swisher refused to go through with the transaction, and Clark brought suit on July 11, 1946, for specific performance of the contract entered into between him and the defendant Mae T. Swisher, and made George E. Swisher, her husband, a party defendant, because of the fact that a warranty deed was filed for record on July 3, 1946, in the office of the county clerk of Oklahoma county, conveying the property in question from Mae T. Swisher to George E. Swisher, and dated February 23, 1931. Clark asked for the cancellation of this deed.

The defendant Mae T. Swisher, by her separate answer, in which she admitted the execution of the deed to her husband on February 23, 1931, denied that she was ever the real and actual owner of the property in question, claiming that it was in her name as a convenience to her husband in order that she might execute a mortgage to him for his use as collateral in borrowing money from the First National Bank & Trust Company in Oklahoma City; denied that she ever put any money into the property, and claimed that her codefendant and husband, George E. Swisher, had been for more than 15 years in actual, open and notorious possession of the property; and denied that she ever claimed to be the legal owner of the property.

George E. Swisher filed his separate answer, stating that he was the owner, in actual possession, of the premises involved in this action, and that all of the property, both real and personal, was purchased with his funds, and that he was the grantee in a deed from Mae T. Swisher dated February 23, 1931, and that by virtue of said deed, and his continuous occupancy of the property for more than 15 years, he had clear title to the property.

It appears from the evidence that the plaintiff, who is a physician, had moved to Oklahoma City in the spring of 1946, and was attempting to rent an apartment from the defendant Mae T. Swisher, but at the time she had no vacancies; and that, in the course of the conversation, Dr. Clark stated that it looked like a person would have to buy an apartment house to find one to live in, and that Mrs. Swisher answered, "Well, why don't you buy this apartment of mine?" Negotiations developed from this conversation, and later, Dr. Clark, together with his brother, Dr. LeMon Clark, went to the home of Mr. and Mrs. Swisher at 17th and Shartel in Oklahoma City and discussed the matter of the purchase of the apartment house with them.

The plaintiff's testimony was to the effect that at no time did George E. Swisher ever claim ownership of either the real estate or the personal property in question. On April 8, 1946, a real estate agent named Henry Van Hook left the contract of purchase in this case, together with a check for $5,000, with Mr. Swisher, and on about April 11th he took a letter to Mrs. Swisher, in which attention was called to the fact that the time set out in the contract had expired, and that Mrs. Swisher would either have to give him the check back or the signed contract, but that she did neither at that time.

On April 15th, Dr. Clark was in the apartment building and talked to Mrs. Swisher, and she agreed to sign the contract, and they went to the office of Mr. Swisher in the apartment building, and there in the office, in the presence of George E. Swisher, Mrs. Swisher signed the contract. At no time, according to the testimony of the plaintiff's witnesses, did George E. Swisher ever claim any title to the property, but Dr. Clark said that at the time Mrs. Swisher signed the contract, her husband did protest that the amount was not enough.

The testimony of George E. Swisher was that he did, in one of the conversations with Dr. Clark, mention the fact that he might have some claim to this property under the community property laws of the State of Oklahoma; that in about 1929 he made a first mortgage on the real estate for $40,000, and a second mortgage for $10,000, and then he had to foreclose these mortgages, and that when the sheriff's deed was issued in the foreclosure proceeding it went to Mae T. Swisher (as M. T. Swisher), and that he put in sufficient money to complete the building and to furnish the same; that the building cost him around $120,000 and the furniture $35,000; that he received all the income from the apartments and paid all the bills; that he was in charge of the property from the time the apartment building was constructed until three years prior to the time of the trial, when he had a stroke, and that he went on the property practically every day except Sundays from the time it was built until he had his stroke; that he had moved his law office and his books and desks from the Colcord Building into the apartment building; that the warranty deed dated February 23, 1931, was delivered to him on that date, and had been in his possession until filed for record; that in 1931 he took a mortgage from his wife for $60,000 and assigned that mortgage over to the First National Bank to secure an indebtedness to them of $55,000; that he never agreed to take less than $120,000 for this property; that Mrs. Swisher came into his office on the day the contract was signed, with Dr. Clark, and that she did sign something there, but that he did not know what it was; that he had claimed this property at all times. Checks were offered in evidence, signed by George E. Swisher— one for $50,000, which went into improvements and furnishings of the Mayfair Apartments, and one for $35,000, which paid for furniture alone for the apartments.

It was stipulated that the furniture and mortgage indebtedness against the property was paid for by George E. Swisher.

An inventory of all the furniture in the apartments, prepared by Dr. Clark's secretary and Mrs. Swisher, was offered in evidence by the plaintiff.

A son of the Swishers, George W. Swisher, testified that he was associated with his father in his father's business, and that he prepared the deed from his mother to his father dated February 23, 1931, and that the deed was kept in his father's safe in the office of the apartment building, and that it was his understanding that the apartment building was owned by his father and mother jointly. That he did prepare a contract to convey the property to Dr. Clark for the amount of $90,000, which was to be substituted for the contract signed by his mother

and Dr. Clark, but that Dr. Clark would not sign the contract that he prepared.

The defendant Mae T. Swisher did not testify in this case, and no reason for her failure to testify was offered.

The contract is here set out:

"(Exhibit 'A')

"Offer to Purchase.

"I hereby offer to purchase, subject to merchantable title, the following described real estate located in Oklahoma City Oklahoma.

"Lots 21 & 22 and the south ten feet (10 feet) Lot 20, in Block 8 Dale Addn to the City of Oklahoma, together with all improvements located thereon and all furnishings of every kind and description.

"The purchase price to be the sum of Ninety Thousand ($90,000.00) Dollars, payable as follows:

"Five Thousand ($5000.00) Dollars as earnest or forfeit money paid with this offer, which is to apply on the purchase price if the offer is accepted, but is to be returned to me if offer is not accepted.

"Ten Thousand ($10,000.00) Dollars in cash at the time of delivery of the Deed and final closing of the papers.

"The remainder of the Purchase Price being the sum of Seventy Five ($75,000.00) . . . . . . . Dollars to be evidenced by notes and secured by purchase money mortgage on the above described property and due and payable as follows:

"One Thousand ($1000.00) Dollars each month beginning thirty days after the first of the month following the closing of the transaction, this payment to include interest at the rate of Four Per Cent (4%) per annum, and is to be paid until the entire debt is liquidated.

"All notes to bear interest from the first of the month following the closing of the transaction and to bear four per cent interest.

"You are to pay all taxes that may be due at the time of the closing of the transaction. I am to keep all buildings and *its* contents insured in standard companies against loss from tornado, fire and hail, such policies to have attached thereto a mortgage clause in your favor.

"You are to lend me abstract of title brought down to date for the purpose of attorney examination, such abstract to be kept with the mortgage notes and to be delivered to me if and when the mortgage indebtedness has been paid in full.

"I am to have the privilege of paying on the principle of said notes the sum of One Thousand ($1000.00) Dollars or any multiple thereof at any monthly payment date and without any penalty.

"Tenant rentals are to be adjusted as of the date of the transfer. This the 8th day of April 1946. This offer is withdrawn unless accepted by noon 4-10-46.

"(Sgd) Anson L. Clark

"Accepted, this the 15th day of April, 1946.

"OK: ANC. (Sgd) Mae T. Swisher."

The trial court, at the close of the evidence, found for the plaintiff and entered judgment in his behalf for specific performance of the contract, and canceled the deed from Mae T. Swisher to George E. Swisher.

Counsel for Mae T. Swisher and George E. Swisher have raised eight assignments of error, and we will discuss these assignments in their order. However, we believe assignment of error No. 1 and assignment of error No. 6 can be treated together.

The first proposition was that the court erred in overruling the demurrers of the defendants to the evidence of the plaintiff, and proposition 6 was that the trial court erred in decreeing specific performance of the contract for the reason that the terms were not certain and specific. In our opinion, everything was covered in the contract that was necessary to consummate the transaction. We said, in

Skidmore v. Leavitt et al., 73 Okla. 196, 175 P. 503, that it is a universally recognized rule that the court will not refuse to enforce a contract where the same can be reasonably sustained. In our opinion, this contract is a better one than the one approved in Davidson et al. v. Roberson, 92 Okla. 161, 218 P. 878. In fact, there is nothing in the contract entered into between Mrs. Swisher and Dr. Clark that could not be carried out in detail.

The defendants' second proposition was that Mae T. Swisher did not own either the real or the personal property, and for that reason, specific performance could not be had against her; but the fact remains that she was the record owner of this property, and at the time Dr. Clark entered into the contract with her there was nothing of record to warn him that anyone else claimed an interest in the property. Dr. Clark discussed this purchase at least twice in the presence of George E. Swisher, and testified that at no time did George E. Swisher claim that he owned the property; so naturally, if found to be true, Swisher would be estopped from setting up as a defense to the action his ownership of the property, as under the statutes of Oklahoma a wife has the right to convey her separate property without the signature of her husband. Because of the fact that Mae T. Swisher became the record owner of this property in 1931, prior to the passage of our Community Property Act, this property was presumed to be her separate property. This has been held in numerous cases. Yates, Administrator, et al. v. Yates, 93 Okla. 94, 219 P. 705; Mendenhall v. Walters, 53 Okla. 598, 157 P. 732; Kent v. Tallent et al., 75 Okla. 185, 183 P. 422; Fibikowski v. Fibikowski, 185 Okla. 520, 94 P. 2d 921.

This estoppel works for both real and personal property. We quote from 31 C.J.S., Estoppel, sec. 90:

"An owner of real property who stands by without asserting his title while a third person sells or mortgages the property may be, under certain conditions, estopped as against the purchaser or mortgagee."

And from section 91:

"The owner of an interest in personal property, who, with full knowledge of his rights, permits another to sell, pledge, or otherwise dispose of it, will be estopped to assert his title as against a third person who has relied on, and has been misled by, his acquiescence."

We held, in Heckman v. Davis et al., 56 Okla. 483, 155 P. 1170, a case very similar in facts to the case at bar, that a person who remains silent and makes no claim to the title, and permits another to complete the purchase and pay his money for the property, cannot later question the purchase.

Certainly, in this case, there was sufficient evidence for the trial court to enter judgment as it did, and we do not believe that the decision was against the weight of the evidence, because George E. Swisher testified that his wife signed the contract in his presence, although he did not know what she was signing. The trial court was justified in finding that he knew that what his wife was signing had something to do with the sale of the apartment building, because of the previous interviews. To have done otherwise would have done violence to his knowledge of human reactions. It was Swisher's duty, if he owned this property, to speak up.

In their third proposition, the Swishers complained that the contract as originally drawn had the provision in it that the offer would be withdrawn unless accepted by 4/10/46, and that actually it was not signed until April 15, 1946, and that for that reason the purchaser was not bound, so the seller could not be bound. They overlooked, however, the fact that Dr. Clark was present at the time that Mrs. Swisher signed the contract, and that he O.K.'d the signing; that this provision was put into the contract by Dr. Clark for his own benefit, and that by his conduct he had waived it. Certainly, when Dr.

Clark told Mrs. Swisher that he wanted her signature to the contract, that constituted a renewal of his offer. We further find that the evidence is sufficient to show that Dr. Clark knew full well that his offer expired on April 10th, but that he still desired to go through with the transaction. 17 C. J. S., Contracts, sec. 42, at page 379, makes this statement:

"As to time of acceptance.—It is not essential that the acceptance be simultaneous with the offer, but where the offer specifies a time of acceptance, an acceptance after that time will be nugatory as an acceptance, *unless the offerer assents thereto with full knowledge that it was not made within the period named. . . .*" United States Cutlery Co. v. Hawkins, 17 La. App. 395, 136 So. 127.

Under their proposition 4, the Swishers claim that this contract cannot be specifically enforced because it includes personal property together with real property. They do not question that specific performance of contracts for the sale of real estate will be completed, but they contend that because the personal property is included therewith, specific performance will not be had, because specific performance cannot be had as to personal property. While we do not find that we have squarely passed upon this question, it seems to be the universal rule that where real property and personal property are sold under the same contract, specific performance will be granted. 49 Am. Juris., sec. 126, says:

"When real property is involved in the same contract as personal property, the jurisdiction to grant specific performance of a contract in regard to the real property carries the right to give entire relief by specific performance of the contract in relation to the personal property, even though it might not, independently, be a proper subject for such relief."

This is supported by the case of Leach v. Fobes, 11 Gray (Mass.) 506, 71 Am. Dec. 732. This rule is discussed at some length in 152 A. L. R. 16, and a list of the states which have adopted the rule of granting specific performance where realty and personal property are being sold under the same contract is set out. We recognized this rule in the case of Flechs v. Richie, 91 Okla. 95, 216 P. 644, but held that it was not applicable to the facts in that particular case. See, also, 58 C.J., Specific Performance, sec. 274, p. 1044.

In their fifth proposition, defendants maintain that because the word "furnishings" was used instead of the word "furniture", the furniture was not included in the contract. In Commercial Casualty Insurance Co. of Newark, N. J., v. Adkisson, 152 Okla. 216, 4 P. 2d 50, we used the word "furnishings" for "furniture". This is not the best English, but certainly in our jurisdiction these words are synonymous.

In their seventh proposition, the defendants complained because the trial court did not include the office furniture of the defendant George E. Swisher as a part of the property covered by the contract. We cannot see anything strange in the court's action in this respect. This was a sale of an apartment building and its contents, and the law-office furniture of George E. Swisher was not a part and parcel of the apartment building, and clearly it was never intended by the parties to the contract that it should be included as a part of the furnishings. Certainly the defendants were not hurt by the action of the court in construing the contract not to include the office equipment of George E. Swisher, and cannot now complain; and certainly if the plaintiff desired to waive his right to the office furniture, he could do so. The defendants cannot complain where the judgment is for less than was possible under pleading and evidence. Fagras v. Marks, 171 Okla. 413, 43 P. 2d 108.

For their eighth proposition, the defendants maintain that error was committed by the trial court in admitting the testimony in regard to the inventory. We cannot see where the defendants could be in any way injured

by that. All the contract called for was the furnishings, together with the apartment building, and that is what the court awarded to the plaintiff. Certainly any error in the admission of such testimony would not result in a miscarriage of justice, and would be harmless. Title 22 O. S. Ann. §1068. The defendants were not prejudiced thereby. Fixico v. Harmon, 180 Okla. 412, 70 P. 2d 114; Yarbrough v. Bellamy, 197 Okla. 493, 172 P. 2d 801.

Specific performance is a purely equitable remedy. Dobler v. Smith, 147 Okla. 20, 294 P. 1089; McCubbins v. Simpson, 186 Okla. 417, 98 P. 2d 49.

We have held innumerable times that in cases of equitable cognizance we will weigh the evidence but will not disturb the finding of the trial court unless it is against the clear weight of the evidence. Landham v. Galbreath, 169 Okla. 451, 37 P. 2d 613; American-First National Bank of Oklahoma City v. Peterson, 169 Okla. 588, 38 P. 2d 957; Kollman v. Pfenning, 196 Okla. 186, 163 P. 2d 534. In this case there were at least four witnesses who testified that Mr. George E. Swisher stated that the property in question belonged to his wife, or were in Swisher's office when the question of ownership of the property was raised, and testified that he made no claim of ownership. The judgment of the trial court in this case is not clearly against the weight of the evidence.

The judgment of the trial court is affirmed.

DAVISON, C.J., and WELCH, CORN, GIBSON, LUTTRELL, JOHNSON, and O'NEAL, JJ., concur.