## HOWERTON v. CALLAWAY, CAREY & FOSTER, Inc.

No. 23937.   Dec. 17, 1935.

Gill & Caldwell, for plaintiff in error.

J. B. Dudley, for defendant in error.

PER CURIAM. This action was commenced in the district court of Oklahoma county where Guss Howerton, plaintiff in error, filed suit against Callaway, Carey & Foster, Inc., a corporation, defendant in error, for the recovery of $3,500 paid on the purchase of real estate and for $1,000 loss in profits. The parties will be referred to as they appeared in the trial below, where Guss Howerton was plaintiff and Callaway, Carey & Foster, Inc., a corporation, was defendant.

Plaintiff alleged in his petition that he had contracted to purchase certain real estate from defendant for the sum of $9,000;

had paid thereon $3,500, that defendant had agreed to deliver these premises free and clear of all incumbrances; that on examination of the abstract, the property was found to be incumbered by mortgage; that plaintiff had demanded that defendant clear the title to the premises, but defendant had failed to do so and that plaintiff has elected to declare the contract terminated and ended and prayed for judgment of $3,500, the sum paid thereon; and in a second cause of action asked for $1,000 damages. Defendant answered: (1) By general denial; and (2) admitting the contract sued on; contended that plaintiff had knowledge of the mortgage on the premises, and had consented to delay in procuring release, and alleged that final payment was never tendered by plaintiff, and that plaintiff was in default; and (3) by cross-petition defendant asked for judgment against p'aintiff for the balance due on said premises.

Upon the trial of the cause at the conclusion of plaintiff's evidence the demurrer of the defendant to plaintiff's evidence was sustained, and the court rendered judgment for the defendant for costs, and the question for decision here is whether the demurrer was properly sustained, or whether the evidence of plaintiff was sufficient to withstand defendant's demurrer. This requires a discussion of the evidence.

The contract sued upon in this case was as follows:

"February 4, 1931.

"Callaway, Carey & Foster, Inc.,
"Oklahoma City, Oklahoma.

"I, the undersigned, hereby agree to purchase the property hereinafter described, to wit:

"All of lots 1 & 2, block E. Carey Place addition to Gatewood addition to Oklahoma City, Oklahoma. subject. however. and on condition that the owner thereof has a good and valid title, in fee simple, and agrees to furnish abstract of title down to date of sale and convey said premises by warranty deed, or contract.

"I agree to pay for same, nine thousand ($9,000) dollars, on the following terms, to wit:

"$1,000 cash, $500 on or before April 1, 1931, $5,500 on or before May 4, 1931, or the entire balance at time building is started. I will transfer equity in a five room brick house and lots known as 1901 West 37th street subject to $2,900 first mortgage made to Dr. Lee Riley, Oklahoma City, Okla., to you

"Said property to be delivered to me free and clear of all incumbrances and taxes now due and payable; subject only to none

"If this proposition is accepted, I agree to close said purchase in accordance herewith, within ____ days after delivery to me of abstract of title, and I further agree to furnish a written opinion from my attorney showing defects, if any, in the title to the above descrbed property.

"I agree to buy insurance in force, paying for unearned premium on a pro rata basis. Rents and interest, if any, to be adjusted on date of closing. Possession of premises to be given on or before—when deal is completed.

"Guss Howerton, Purchaser.
"Address: 400 Perrine Bldg."
"February 4, 1931.

"Received from Gus Howerton, the sum of one thousand ($1,000) dollars, to apply on the purchase price of the above-described property on terms and conditions as stated above, it being hereby agreed and understood that in case of any legal defect in the title, which cannot be cured after filing with us written notice of such legal defect, the money hereby paid is to be refunded to Gus Howerton, and in the event of the refusal or failure of the buyer to consummate the purchase, to be retained as liquidated damages for failure to carry out said contract of sale as hereinabove agreed to.

"This receipt is given and proposition taken subject to approval of sale by the owner within 2 days; earnest money deposited to be refunded if offer not accepted.

"Callaway, Carey & Foster, Inc.
"Agents
"By C. J. Funk."

"We hereby accept the above proposition on the terms above stated, and agree to deliver and convey said premises, and perform all the terms and conditions above set forth, and pay the regular commission as recommended by the Oklahoma City Real Estate Board.

"Callaway, Carey & Foster.
"By C. J. Funk" (Rec. 4-10)

Guss Howerton, plaintiff, testified that after making the contract an abstract was delivered to him; that his attorney examined the abstract and required additional entries; that abstract was again furnished by defendant, and on March 7, 1931, his attorney rendered an opinion to the effect that the title to the premises was in G. A. Nichols, Inc., (a third party), and that the premises were subject to a mortgage or trust agreement for $12,000,000; that defendant was furnished this opinion; that plaintiff had paid $1,000 down to defendant, $500 in a later

payment and deeded property to defendant, accepted by them for $2,000; that under date of April 15, 1931, plaintiff wrote to defendant as follows:

"I have not as yet received the abstract or heard from you regarding lots one and two, block E, Carey Place.

**"I have these lots sold to be delivered not later than** May 10th and unless you can get your title into shape to close by that date, I will ask for cancellation of our contract and the return to me of all money paid you on same.

"Please see if you cannot secure the release and get this deal closed **as I do not want to lose this sale."**

The parts emphasized being excluded from evidence. That defendant had not tendered him a deed and that he never received a release of the mortgage and that he brought this action on June 19, 1931; that a balance of $5,500 was to be paid on the purchase price on or about May 4, 1931, which he had been ready to pay at all times and had told defendant that he would be when they fixed the title; that he had insisted on defendant getting the title fixed and that he would pay them the $5,500; that he did not get the abstract back; that he had told defendant it would not make any difference as to a few days' delay, but that he had to have it within his contract date (May 10th) and that on June 19, 1931, he filed suit after defendant had failed to correct the title to that time; that he was informed by defendant three days after he filed suit that they had the release of the mortgage and the release of mortgage was put on record on June 23, 1931.

Plaintiff offered evidence as to a sale he had made of these premises and which he was unable to close on account of no title. This evidence was excluded by the court. The witness testified that it would take about 24 hours to get a letter to St. Louis where the mortgage was held and same length of time to get a return; that he informed defendant on May 10th that he was ready to close the deal if they would correct the title, but that he could not wait any longer, and that at all times from date of the contract to and including May 10th he was ready and able to pay the $5,500, if defendant furnished correct title; that he was financially able to pay this money. Evidence as to the value of the property was also offered.

While other evidence was offered and rejected and exceptions taken to the court's ruling, no assignments of error are predicated thereon and both parties brief and submit the case on the question as to whether tender of the balance of the purchase price by plaintiff was necessary before he could maintain this suit.

The general rule is that, in order to enable the purchaser to rescind for a breach of the contract by the vendor, he must have performed or tendered performance of precedent covenants on his part, and tendered performance of concurrent covenants, and demanded performance by the vendor.

Defendant, in his brief, takes the position that the delivery of the deed by the defendant was an obligation to be concurrent with the payment of the final cash installments of $5,500 by plaintiff. We agree with this construction of the contract, for in contracts for the sale of realty the undertakings of the respective parties are always considered dependent unless the contrary intention clearly appears, and, consequently, the payment of the whole purchase price and the giving of the deed are regarded as concurrent acts, and the ability and readiness of either party must exist before the other can be enforced.

The defendant in its brief states:

"The evidence showed that plaintiff was at all times since and prior to May 4, 1931, financially able to pay this $5,500 or tender the same, but that he did not do so because he was waiting for the defendant to get its title fixed up."

And defendant insists that the failure of plaintiff to make a tender of this $5,500, being the final payment, precludes plaintiff from recovering in this action.

The evidence is undisputed that on May 4, 1931, the time fixed for this final payment, when deed would be delivered, that the title to this real estate was not in defendant but was in a third party; that a mortgage of $12,000,000 was against the premises. Plaintiff had notified defendant in writing that the title must be fixed up on or before May 10, 1931. The evidence of plaintiff was that he had, at all times, been insisting that the title be fixed up, that the deal be completed, and that he was ready and willing at all times to pay $5,500, the final payment, whenever the deed was ready for delivery; that a deed had never been offered him and that no release of the mortgage had been offered prior to time of filing suit.

There are exceptions to the rule requiring tender of payment in cases of this kind. A well established exception is that, if ven-

dor is unable or refuses to perform at the time agreed on, the purchaser need not tender performance or demand performance by the vendor. Under these circumstances he is not bound to pay or tender payment of unpaid purchase money. 66 C. J. 818.

This court has held:

"It is universally recognized in law that when a tender is necessary to establish a right against another party, it becomes unnecessary when it appears that such tender, if made, would have been refused." Janeway et al. v. Vandeventer, 172 Okla. 379, 45 P. (2d) 79.

Since plaintiff had been demanding closing of the deal by getting a release of the mortgage and title to the real estate and defendant admitted he did not have a release at time final payment was due and that title was in another, it is apparent that a tender of the $5,500, if made, would have been refused as it could not have been accepted. A demurrer to the evidence, which this court has often held, admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn from the evidence. Holmes v. Carey, Lombard, Young & Co., 169 Okla. 97, 36 P. (2d) 8. We think the inference and conclusion would be clearly that this tender if made would have been refused.

In this case the evidence is undisputed that at the time the final payment was due, the title was not in vendor and a release of the mortgage had not been procured. Under these circumstances the vendee would not be required to make the tender. Black states the rule as follows:

"When it is definitely ascertained that the vendor in a contract for the sale of land has no title, and cannot procure one or cause one to be made, or has been placed, either by his own act or by operation of law, in a situation where it is impossible for him to convey, it is not necessary for the purchaser to make a tender of the purchase money before taking steps to rescind the contract, since the law does not require the performance of any idle or useless formality. And the existence of liens on land subject to a contract of sale is sufficient proof of the vendor's default to authorize the purchaser to rescind the contract, and sue for money paid under it, without making a formal tender of performance on his part." Black on Rescission and Cancellation, vol. 2, sec. 566.

This court, in a frequently quoted case, has upheld the right of the vendee to recover even though he refuses to make the last payment where the vendor cannot convey good title when the payment is due.

"A party who has contracted to buy real estate and has paid a portion of the consideration, and then refuses to pay the balance when due under the contract of sale, the other party being ready and willing to fulfill all his stipulations according to said contract, will not be permitted to recover what he has paid; but, where such other party is unable to convey a valid title to said property at the time the purchaser's other payment is due, the purchaser may recover such amounts as have been paid." Bishoff v. Myers, 101 Okla. 36, 223 P. 165.

While there is some conflict in the authorities as to necessity of a tender where vendor is unable to make valid title at time of performance, the weight of authority is that it is not required. The Supreme Court of Idaho, in the case of Marshall et al. v. Gilster et ux., 201 P. 711, discusses the question as follows:

"If the vendor is unable to perform at the time performance is required of him, a tender of performance by the purchaser would be vain and idle, and is not required. 39 Cyc. 1422, 2048; Sutthoff v. Maruca, 57 Wash. 102, 106 P. 632; Aurand v. Perry, T. L. & Imp. Co., 178 Iowa, 262, 159 N. W. 779; McManus v. Patch, 20 Cal. App. 479, 129 P. 613; Sherwin v. Baxter, 86 Kan. 730, 121 P. 1128; Kreutzer v. Lynch, 122 Wis. 474, 100 N. W. 887; Nelson v. Chingren, 132 Iowa, 383, 106 N. W. 936; Kicks v. State Bank, 12 N. D. 576, 98 N. W. 408; Burk v. Schrieber, 183 Mass. 35, 66 N. E. 411; Smith v. Lewis, 24 Conn. 624, 63 Am. Dec. 180; Burks v. Davies, 85 Cal. 110, 24 P. 613, 20 Am. St. Rep. 213; Runkle v. Johnson, 30 Ill. 328, 83 Am. Dec. 191; Smith v. Lamb, 26 Ill. 396, 79 Am. Dec. 381. Here the evidence tended to show that respondents could not perform at the time performance was required of them, and a tender on the part of appellants was not required. In most of the cases on this question, the conditions to be performed by the vendor and vendee are concurrent. In some of the earlier decisions, a different rule is enforced where payment by the vendee is a condition precedent. In the contract between appellant and respondents the expression that 'upon payment or tender of the purchase price to respondents, they shall execute and deliver to appellants a good and sufficient warranty deed,' might make it appear at first blush that payment is a condition precedent. The expression in the preceding paragraph that 'appellants agree to receive said property and pay the balance of the purchase price on or before September 17, 1917,' makes it appear that the conditions are concurrent. In case of doubt, and where it can be done without doing violence to the language of

the contract, the courts held that the conditions of payment and conveyance are concurrent. 2 Williston on Contracts, sec. 835'; San Diego Construction Co. v. Mannix, 175 Cal. 548, 166 P. 325. That is the construction which we place upon the contract in this case. But, even if it should be held that the payment of the balance was a condition precedent, the rule would not be otherwise. Under the great weight of authority, even where payment is a condition precedent, a tender by the vendee is dispensed with when, at the time for performance on his part, the vendor is unable or refuses to substantially perform. 2 Williston on Contracts, secs. 767, 768; Sands v. Clarke, 8 C. B. 751, 762; Newcomb v. Brackett, 16 Mass. 161."

The Supreme Court of Montana, in Bozdech et al. v. Montana Ranches Co. (Mont.) 216 P. 319, quote with approval from the case of Holmes v. Holmes, 12 Barb. (N. Y.) 137, which is frequently quoted, as follows:

"Unless the law, in regard to contracts for the sale of real property, has come to be a repetition of useless and unmeaning ceremonies, a contracting party who suffers the subject of the contract to be charged with incumbrances of his own creation, or to remain charged with those created by others, in breach of his covenant to assure a good title, as fully and effectually waives and relieves the covenantee from the actual production and offer of the purchase money, as he could do by the use of express words, or by any other means within his power. When he has no title, or his title is defective, at the time when the conveyance is to be made, any condition precedent, such as tendering, paying, or securing the purchase money, need not be fulfilled."

It has frequently been held as in Smith v. Lewis, 26 Conn. 110, that the word "tender" in a case of this character does not mean the same kind of offer as in paying an ordinary debt, but only means a readiness and willingness, accompanied with an ability on the part of vendee to do what the contract requires him to do providing the other party will do his part. We do not consider that the plaintiff, under the evidence in this case, was in default. Since under the circumstances of this case an actual tender of the money was unnecessary, the demurrer to the evidence should have been overruled. The cause is remanded, with directions to grant a new trial.

The Supreme Court acknowledges the aid of Attorneys Wm. J. Otjen and Harry C. Kirkendall in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. Otjen and approved by Mr. Kirkendall, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.