John B. ANDERSON and Lucy A. Anderson, Appellants,

v.

Gerald C. PICKERING and Robert B. Duffield, Appellees.

No. 46281.

Court of Appeals of Oklahoma, Division No. 1.

July 1, 1975.

Rehearing Denied Aug. 26, 1975.

Certiorari Denied Oct. 28, 1975.

Released for Publication by Order of Court of Appeals Oct. 30, 1975.

Remington Rogers, Tulsa, for appellants.

Kelly & Gambill by Bruce W. Gambill, Pawhuska, for appellees.

REYNOLDS, Judge:

This is an action by appellants, hereinafter referred to as plaintiffs, to cancel a real estate sales contract for non-perform-

ance and quiet their title to said lands, and a cross action by appellees, hereinafter referred to as defendants, for specific performance of the real estate contract. The case was tried on September 13, 1971. The trial court reserved judgment until the 12th day of January, 1973. On that date the court granted judgment for specific performance.

On January 9, 1963, John and Lucy Anderson entered into a contract with Gerald Pickering and Robert Duffield whereby Pickering and Duffield were given a 90-day option to purchase 17 tracts of land to which the Andersons claimed ownership.

The option was exercised and certified abstracts were delivered to the purchasers for their approval. With sellers permission, Duffield and Pickering took possession at that time and proceeded to develop the land, arranging for an access road and spending considerable sums on land development plans and slope analysis. Title requirements were submitted to the plaintiffs by the attorney for Duffield and Pickering on August 17, 1963, September 3, 1963, and December 17, 1963. Curative work was postponed at the request of the buyers who were involved in a lawsuit between themselves in early 1964, in an unsuccessful attempt by Duffield to dissolve their joint venture.

On May 22, 1964, the vendors proceeded to file suits to quiet title pursuant to the title requirements by the vendees. On August 7, 1964, the Andersons completed delivery of the newly certified abstracts to Pickering's attorney for approval. At this point, plaintiffs assert that pursuant to the contract, the vendees had thirty days, or until September 8, 1964, to re-examine the abstracts and tender $45,000.00 as down payment and a note and mortgage securing the balance of the purchase price. The abstracts were re-examined and on September 4, 1964, requirements were made which essentially repeated those made previously for two of the tracts. On September 8, 1964, Mr. Duffield met with plaintiffs' attorney and discussed their differences as to the title requirements for the two tracts. Plaintiffs' attorney elected to stand on the work done on the other land titles believing that enough had been done to satisfy the merchantable title requirement in the contract. The testimony as to what Duffield said and did at that time is conflicting. He either offered to put the $45,000.-00 down payment in escrow, pending plaintiffs perfection of title, or he told Anderson that he would go through with the contract only if his partner, Pickering, were eliminated as a party to the contract. On September 9, 1964, Pickering filed the contract for record. On September 11, 1964, by letters, Anderson's attorney declared the defendants in default and rescinded the contract, and Duffield offered to put the $45,000.00 in escrow pending tender of merchantable title and warranty deeds, suggesting that suit should be filed to quiet the title and to bring all matters to a conclusion.

On October 12, 1964, Duffield filed suit against Pickering and the Andersons. Duffield tendered the $45,000.00 down payment into court and requested the court to order them to perform the curative work on the titles in question and to convey the property according to the contract.

On October 22nd, Andersons' attorney acquired a release of a right-of-way in satisfaction of one of the title requirements.

The Andersons then sued Pickering and Duffield to quiet title to the land in question. The two cases were consolidated and tried before the Honorable Mermon H. Potter, Associate District Judge, on September 13 and 14, 1971. The parties reached an agreement along the way to allow the court to consider the disagreement between Pickering and Duffield at some other time.

During the course of the litigation, Pickering filed bankruptcy, and a receiver was appointed to litigate his interest in the contract. Also, John and Lucy Anderson both died. Their interest was revived and litigated by their estate.

The trial court found plaintiffs' titles were not merchantable and ordered plaintiffs to perform the requirements on the two tracts of land within sixty days. If plaintiffs failed to perform as ordered, the defendants were to complete the requirements on the two tracts of land within sixty days and reduce the purchase price by the cost thereof.

The issue in this case is whether the plaintiffs tendered merchantable title to the several tracts of land involved; and if not, were there circumstances which would excuse this performance? The plaintiffs have argued that their performance was adequate under the law and that Pickering and Duffield breached the contract by failing to place $45,000.00 cash or its equivalent in their hands on September 8, 1964.

The plaintiffs have urged errors, consolidating them in their brief into three propositions. The first two points of error, combined in Proposition I, urge that the trial court erred in that it did not apply the doctrine of substantial performance. Plaintiffs assert that the transaction was a sale in gross, and thus that a deficiency in acreage would not be a breach; or, alternatively, that it was a sale by the acre but the deficiency in the titles was insubstantial because it concerned only 112 acres; or, alternatively, that the titles were merchantable by virtue of the Merchantable Title Act; or, as a final alternative, that they had record title.

■ The first argument, that the sale was in gross, does not apply to these facts as there has been no allegation that the sale was induced by a fraudulent assertion that there was either more or less acreage than could be transferred. The distinction between sales in gross and sales by the acre is made in cases in which there is a mistake as to the quantity of land transferred, and the court must determine whether there was risk indulged in by the parties as to the quantity of acreage involved. The problem in this case does not concern the *quantity of acreage* involved,

but rather the *quality of the titles to each tract of land* to be conveyed.

"Where there is a sale of land per aversionem, or at a gross sum for the whole premises, . . . the *purchaser is entitled to the land contained within the designated boundaries of his grant . . .*" *Morris Canal Co. v. Emmett,* 9 Paige (N.Y.) 168, 37 Am.Dec. 388, quoted in *Burke v. Smith,* 57 Okl. 196, 157 P. 51 (1916). (Emphasis supplied.) The purchaser is entitled to a merchantable title to the land bargained for and agreed upon in the contract. The *designated boundaries* of this grant include all seventeen of the tracts included in the contract.

■ The second contention, that the sale was by the acre and that the trial court should have applied the doctrine of substantial performance, would suggest that the court should decree that the defendants had breached the contract despite the fact that plaintiffs had failed to tender merchantable title to all tracts of land. Plaintiffs have cited no cases sustaining the proposition that in a contract for the sale of several tracts of land that tender of less than the total number of acres agreed on would satisfy the contractual duties.

A failure of title is the most basic breach that can occur in a real estate contract. Because it involved only two out of the 17 tracts does not make the breach of less importance. The vendees were not at liberty to choose which tracts they would purchase after the contract was made in the absence of acquiescence or mutual agreement. Neither will the vendors be allowed to pick and choose the tracts on which they will perform the required curative title work.

■ The third contention, that the titles were merchantable by virtue of the Merchantable Title Act, is not applicable here. The authorities which plaintiffs cite concern actions to quiet title. No authority has been found and none has been cited which would require a vendee to purchase

real property where there is a defective title. The Merchantable Title Act provides a method through which title may be quieted statutorily. It is not self-executing, nor does it provide a perfect remedy for every instance.

■ Neither does the argument that plaintiffs' abstracts showed record title to one of the tracts in question support plaintiffs' assertion that they were ready and able to perform the contract.

The abstract to tract 12 showed an unbroken chain of title, from Thomas R. Leahy, the original allottee, to John Anderson. Investigation of probate records, however, revealed that one Thomas R. Leahy, with the same roll number as Anderson's grantor, had passed away some years before Anderson acquired the land. An abstractor's error is not determinative of ownership.

■ The plaintiffs, having failed to perform the condition in the contract cannot now complain that the defendants breached. A party to a contract cannot put the other party in default by his own failure to perform. *Padberg v. Rigney,* 204 Okl. 131, 227 P.2d 661 (1951). The promise by the vendor to convey merchantable title, and the promise by the vendee to tender a specified amount of money are mutually dependent conditions to be performed at the same time. Neither party is bound without tender of the other at the same time. *Kendall v. Hastings,* 200 Okl. 643, 198 P.2d 998 (1948); *Howerton v. Callaway,* 175 Okl. 311, 52 P.2d 845 (1935); *Kane v. Hood,* 13 Pick. (30 Mass.) 281 (1832).

As the plaintiffs failed to deliver merchantable title, the court must direct its attention to the question of whether there were circumstances which would excuse this breach. In Plaintiffs' Proposition II, combining their third and fourth points of error, they assert that the buyers were not entitled to a decree of specific performance as they failed to avail themselves of the remedies included in the contract and

that these remedies are exclusive, and that failure to affirm the contract and to tender the $45,000.00 on September 8th amounted to an abandonment of the contract.

The Plaintiff cites authorities annotated in 84 A.L.R.2d 322 and *Pan Mutual Royalty Insurance v. McElhiney,* 376 P.2d 232 (Okl.1962), citing 12 Am.Jur. Contracts, § 458, as authority for the rule that ". . . [W]hen parties stipulate in a contract that the consequences of a breach of the agreement shall be, such stipulation if reasonable is controlling and excludes other consequences. Where a contract prescribes a remedy for a breach, that remedy is generally exclusive."

The provisions in the contract to which plaintiffs refer are:

"In the event sellers cannot convey merchantable title as aforesaid, second parties *may elect to waive* such requirements or to declare this contract null and void and first parties agree to return the consideration thereto paid. In the event first parties willfully fail to meet requirements making the title merchantable, second parties *shall have the right to do* whatever necessary to comply with such requirements and to deduct the necessary reasonable expenses from the total purchase price." (Emphasis supplied.)

These provisions are neither stipulations nor remedies. By their terms they are rights which the buyers may exercise ". . . [M]ay elect to waive . . ." and ". . . [S]hall have the right to do . . ." are not words which restrict the parties to any fixed course of action. Rather, they expand the rights under the contract.

■ When a contract is placed before a court so that there may be a judicial determination of the rights of the parties thereto the court must consider the provisions of the contract in the light of their plain meaning. It cannot read into this binding statement a restriction which is not there. 15 O.S.1971, § 152; *Romans v. Shannon,*

80 Okl. 199, 195 P. 298 (1921); *Strange v. Hicks,* 78 Okl. 1, 188 P. 347 (1920); *Watson v. Stone,* 68 Okl. 33, 171 P. 336 (1918).

■ Plaintiffs' argument that the buyers' failure to tender the $45,000.00 down payment amounted to a rescission is not in any way supported by the contractual provisions or the actions of either party. Plaintiffs cite *Houts v. Conrad,* 98 Okl. 153, 224 P. 357 (1924), for the proposition that a buyer in a real estate contract must either rescind and get his down payment back or perform by paying the balance. In that case, as in this one, the seller did not tender a marketable title. However, in the *Houts* case, supra, the court observed that it was apparent that both parties had abandoned the contract.

The court stated that ". . . [I]f the vendee by the terms of the contract is entitled to receive title to real estate of a certain status, it is the right of the vendee to insist on the vendor meeting the requirements of the contract." *Aikman v. Sanborn,* 5 Cal.Unrep. 961, 52 P. 729.

Also, the facts in evidence, even plaintiffs' version of those in conflict, indicate a presently ongoing intent to affirm the contract. Plaintiffs state that Duffield came into plaintiffs' attorney's office and said ". . . [T]hat he would get Pickering out of the case . . ." This attitude by the buyer, to pay the money and proceed, at a time when the seller was in default, can be viewed in no other way than as an affirmance. Also, it must have been understood by the plaintiffs' attorney as an affirmance because as late as October 22, 1964, eleven days after buyer filed suit plaintiffs obtained a release of an easement satisfying one of the unsatisfied title requirements.

Neither party offers an explanation of why the curative title work was not performed. The parties stipulated that title to one five acre tract could not be quieted. However, the other presumably could have been made merchantable but neither party wanted to perform this undertaking. As it was the seller's contractual duty to perform this normally perfunctual chore, they breached by not performing, and, as stated above, the promise to tender merchantable titles and the promise to tender payment are mutually dependent conditions to be performed at the same time.

■ Plaintiffs' Proposition III, combining the remaining points of error, deals with the assertion that the remedy of specific performance should not be granted. They assert that the contract requires the buyers to develop the acreage for residential and other purposes and that this performance is of such a complexity as to classify the contract as one for personal services; that since courts of equity will not grant specific performance of personal services that there is, therefore, a lack of mutuality of remedy and specific performance should be denied. Plaintiffs assert that they were entitled to the joint performance of both Pickering and Duffield and that since Pickering's interest has been put in the hands of a receiver this joint performance could not be rendered. They also assert that the buyers had abandoned the contract due to Duffield's attempts to sever his relationship with Pickering.

Careful reading of the contractual provisions in evidence compels us to agree with the trial court, that specific performance is a proper remedy.

The mortgage referred to in the contract is to secure the sum of $325.00 per acre for certain classified tracts and $200.00 per acre for the remainder, or for $440,475.00 with interest at the rate of 4½% per annum. Either computation is based on a sum certain and is not dependent on development of the property. The language in the contract referring to a percentage of 35% relates to the time of payment which is in turn related to speed and/or profitability of development. There is nothing in the contract, and there was nothing placed in evidence which would suggest the argument that the consideration for this contract included anything more than the pur-

chase price. There is no failure of consideration which would void the contract, as in any event, the sellers are entitled to a specified sum. As this consideration is to be secured by a mortgage on the property there can be no assertion that their security is impaired. The only duty which the buyers owe the sellers is to make payments according to the contract which provides that the sellers have a right to an accounting. This right is easily and often enforced by courts of law. Therefore, there is no lack of mutuality of remedy. *Scott v. Norris et al.*, 62 Okl. 292, 162 P. 1085 (1917). The duty of the buyers under the contract being solely to pay for the land, their interests are fully assignable and may be performed by either party, both parties, or anyone acquiring an interest therein.

■ Pickering and Duffield were joint adventurers in this transaction, and a joint adventure is governed by the rules of partnership. *Commercial Lumber Co. v. Nelson*, 181 Okl. 122, 72 P.2d 829 (1937); 54 O.S.1971, § 209. Either partner is empowered to act by and for the partnership. When a partnership is dissolved, as this one was by the bankruptcy of Pickering, 54 O.S.1971, § 231, the partnership continues for purposes of disposing of the partnership interests and completing partnership obligations which existed at the time of dissolution. Therefore, if the partnership was viable at the time the contract was made, the asset belongs to the partnership.

As stated above, as either partner acts for the partnership and binds it legally by those acts, the actions of both parties must be considered in determining whether the contract was abandoned. As stated above, Duffield's statements to Anderson's attorney on September 8, 1964, were looking toward completion of the contract. So, also, was the suit filed on October 12, 1964. Pickering also acted in confirmance of the contract when he filed the contract for record. Duffield's attempt to exclude Pickering, though perhaps actionable by Pickering if it had been successful, did not amount to an abandonment of the contract

as by acting in his own selfish interest he also acted for the partnership.

The plaintiffs having breached this contract for sale of real property, the defendants are entitled to a decree of specific performance. *Swisher v. Clark*, 202 Okl. 25, 209 P.2d 880 (1949); *Neff v. Cohen*, 202 Okl. 511, 215 P.2d 823 (1950).

Affirmed.

ROMANG, P. J., and BOX, J., concur.