James L. KNOWLES and Lavon Knowles, his wife, Appellees,

v.

Eunie V. FREEMAN, Andover Oil Company, et al., Appellants.

No. 57128.

Supreme Court of Oklahoma.

July 27, 1982.

As Corrected Aug. 2, 1982.

Eddie A. McCroskey, Poteau, for appellees.

Wm. S. Hall, Thomas A. Mann, Feldman, Hall, Franden & Woodard, Tulsa, for appellants.

LAVENDER, Justice:

Appellant (defendant below) appealed from a judgment of the district court reforming a mineral deed and quieting title in Appellees (plaintiffs below) in a 16.667-acre interest in the oil, gas and other minerals in certain lands in Haskell County Oklahoma.

The issues herein presented are delineated by mineral deeds as follows:

On November 30, 1965, plaintiffs executed a mineral deed in favor of L. B. Burris, conveying an undivided 200-acre mineral interest in plaintiffs' 240-acre mineral interest, which conveyance included the 40-acre tract here in dispute. The mineral deed was recorded on December 10, 1965.

On December 1, 1965, L. B. Burris and wife executed a mineral deed in favor of Homer L. Griffith, conveying an undivided

100-acre mineral interest in Burris' 240-mineral acre interest, which conveyance also included the 40-acre tract here in dispute. The mineral deed was recorded on December 10, 1965.

On January 3, 1966, plaintiffs executed a mineral deed in favor of L. B. Burris conveying an undivided 200-acre interest in the oil, gas and other minerals, describing therein the property containing the 200 acres, *but omitting the disputed 40-acre tract.* The instrument recites that it is for the purpose of correcting the November 30, 1965, mineral deed from plaintiffs to Burris. The "corrective" mineral deed was recorded on January 3, 1966.

Probate records show that Homer L. Griffith died on November 20, 1971, and his estate passed to his widow, Mildred M. Griffith.

On May 15, 1975, Mildred M. Griffith, an unmarried person, individually, as executrix and sole devisee of the estate of Homer L. Griffith, deceased, executed a mineral deed to defendant conveying all her interest in the disputed 40-acre tract, together with other minerals not herein involved. The deed was recorded on June 5, 1975.

Upon trial, the trial court found and determined that the mineral deed dated November 30, 1965, conveyed the mineral interest in the 40-acre tract in dispute by mutual mistake of the grantors and grantee, ordered the mineral deed reformed by deleting the questioned 40-acre tract therefrom, and quieted title in the plaintiffs.

The sole issue which is determinative of this appeal is whether defendant Andover Oil Company acquired the status of a bona fide purchaser when it obtained the mineral deed from Mildred M. Griffith, thereby precluding the reformation of the deed of November 30, 1965, from divesting defendant of its claimed mineral interest in the disputed 40-acre tract.

Title 16 O.S.1981, § 16 provides: "Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or creditors."

Thus, the recording of an instrument affecting title to realty in the county where the land is situated, in compliance with said statute constitutes constructive notice of such instrument, and all subsequent purchasers are charged with notice thereof.[1]

Therefore, defendant had constructive notice of the mineral deed dated November 30, 1965, of the deed from the Burrises to Griffith dated December 1, 1965, and of the purported corrective deed dated January 3, 1966, from plaintiffs to Burris. But having so determined, there remains the question of what notice or warning such instruments imparted to defendant at the time it acquired the deed from Mildred M. Griffith, and whether it was such as to thwart defendant's claim that it was a bona fide purchaser of the mineral interest.

In *Simpson v. Burris,*[2] this Court quoted, with approval, from 76 C.J.S. Reformation of Instruments § 59, p. 409, as follows:

"An instrument may not be reformed as against a subsequent bona fide purchaser for value without notice, whether the mistake occurs in a deed or in a mortgage; and an instrument is likewise not reformable as against a subsequent mortgagee for value without notice. * *."

On the other hand, we also held in *Cleary Petroleum Corp. v. Harrison,*[3] (at p. 531):

"The bona-fide-purchaser defense cannot create an interest whose existence is negatived by the record. The doctrine protects against unknown claims that may not be discovered from the record—not those of which the purchaser has constructive notice."

1. *Johnson v. Farmers' Union Co-op Royalty Co.,* 205 Okl. 478, 238 P.2d 831 (1952); *Berryman v. Producers Corp. of Nev.,* 206 Okl. 24, 240 P.2d 1111 (1952).

2. Okl., 365 P.2d 134 (1961).

3. Okl., 621 P.2d 528 (1980).

In its claim that the notice imparted by the "corrective" mineral deed did not derogate its status as a bona fide purchaser, defendant relies upon Standard 4.4 of the Title Examination Standards as Revised and Adopted by the House of Delegates of the Oklahoma Bar Association November 29, 1962, which provides:

"4.4 Corrective Instruments

"A grantor who has conveyed by an effective, unambiguous instrument, can not, by executing another instrument, make a substantial change in the name of the grantee, decrease the size of the premises or the extent of the estate granted, impose a condition or limitation upon the interest granted, or otherwise derogate from the first grant, even though the latter instrument purports to correct or modify the former. However, marketability dependent upon the effect of the first instrument is not impaired by the second instrument."

The foregoing Title Examination Standards (16 O.S.1981, Ch. 1, App.) were adopted by the House of Delegates of the Oklahoma Bar Association on November 29, 1962, as a result of an extensive study of established standards for determining a marketable or merchantable title to real property under the law of Oklahoma. While said Title Examination Standards are not binding upon this Court, by reason of the research and careful study prior to their adoption and by reason of their general acceptance among the members of the bar of this state since their adoption, we deem such Title Examination Standards and the annotations cited in support thereof to be persuasive.

In the case of *Kirkpatrick v. Ault,*[4] the Kansas Supreme Court said (p. 641):

"In 26 C.J.S., Deeds, § 31, dealing with the correction of deeds by subsequent instrument, the pertinent portions of the text read:

'Where there is no fraud and the rights of third persons have not intervened, and equity could have reformed the deed, it may be amended by a subsequent instrument so as to effectuate the intention of the parties. * * * As against third persons an alleged defective deed can be cured only by a bill in equity, and not by a confirmation assuming to relate back to the original deed. * * * Where the grantor has divested himself of title, although by mistake he has not conveyed the title in the way in which he intended, he cannot by a subsequent conveyance correct his mistake, there being no title in him to convey.' "

The question to be answered here is unlike that in *Cleary.* It is not whether Griffith's grantor had good title but rather whether Griffith—the unchallenged bona fide purchaser at the time of his purchase—could pass—to a third party conveyee—title free of the infirmity created by an after-recorded cloud—the correction deed that surfaced after Griffith's acquisition of the property in question.

■ In the case now before us, the plaintiffs not only conveyed the mineral interest in the questioned 40-acre tract to Burris, but in addition, Burris conveyed the mineral interest to Homer L. Griffith and the mineral deed was recorded prior to the recording of the purported "corrective deed" from plaintiffs to Burris. Since Griffith had no notice, actual or constructive, that the 40-acre tract was included in the deed to him by mistake, whether mutual or unilateral, Griffith became a bona fide purchaser and owner of the conveyed mineral interest, a status which inured to his widow, Mildred M. Griffith, when she in turn conveyed to defendant.

Title to the mineral interest having passed to a bona fide purchaser prior to the recording of the "corrective" deed, it becomes of no consequence whether defendant had notice of the claim of plaintiffs that the conveyance included the mineral interest in the 40-acre tract at the time defendant acquired title.

In 23 Am.Jur.2d Deeds § 158, it is stated:

4.   177 Kan. 552, 280 P.2d 637 (1955).

**536**

"Mistake renders a deed voidable only. The deed, in other words, conveys title to the grantee therein; and if he reconveys to an innocent purchaser for value, no relief is obtainable by way of reformation or cancellation against the latter on the ground of mistake. Once the right to have a mistake in a deed rectified is shut off by conveyance to a bona fide purchaser, a grantee from such purchaser is entitled to the same protection, even though such grantee was charged with notice of the mistake. * * *." [5]

■ Therefore, since defendant was the grantee of a bona fide purchaser for value without notice of the disputed mineral interest, and since the record notice to it imparted by the recording of the reconveyance of its predecessor in title of a lesser estate, at a time when the grantors of the "corrective" mineral deed had no title to convey was ineffectual, judgment must be entered in favor of defendant. Andover Oil Company as to the 16.667 interest in the oil, gas and other minerals title to which it claims. The case is remanded with directions to amend the judgment so as to affirm the 16.667-acre interest in Andover Oil Company and to quiet its title on its cross-petition to such interest as against the plaintiffs and other defendants.

Reversed and remanded.

All of the Justices concur.

**5.** See also, 77 Am.Jur.2d Vendor and Purchaser § 772; 44 A.L.R. 92; 79 A.L.R.2d 1199 and the 1981 Later Case Service, p. 106.