Lawrence E. BENNETT, Plaintiff,

v.

Etta Beals WHITEHOUSE, et al., Defendants.

No. CIV–86–1711–P.

United States District Court, W.D. Oklahoma.

April 11, 1988.

Bradley D. Brickell, Oklahoma City, Okl., for plaintiff.

Eleanor Thompson, Charles C. Smith, Oklahoma City, Okl., Windle Turley, Dallas, Tex., Velmer J. Dimery, Norman, Okl., for defendants.

## ORDER AND MEMORANDUM OPINION

PHILLIPS, District Judge.

Lawrence E. Bennett filed this action to quiet title to a term mineral interest underlying certain property in Roger Mills County, Oklahoma. Plaintiff seeks to quiet title under the Marketable Record Title Act (hereafter "Act"), 16 O.S. §§ 71–85 (1986). Defendants claim an interest in the property and challenge the constitutionality of the Act on due process grounds. This Court has jurisdiction pursuant to 28 U.S.C. § 1346(f).

### THE MARKETABLE RECORD TITLE ACT

The Oklahoma Legislature enacted the Marketable Record Title Act in 1963, based on the Model Act drafted by L. Simes and C. Taylor.[1] The Act initially provided for a period of forty years as the time required to establish marketable title and to extinguish outstanding claims. In 1970, the Act was amended to reduce this period to thirty years.[2]

The Act provides that if one has an unbroken chain of record title of at least thirty years duration, with no defects in that record chain of title, and with no recorded instrument during that period which purports to divest that title, then that person has a marketable title.[3] The Act is to be liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title, subject only to certain statutory limitations.[4]

All interests created prior to the "root of title" are extinguished by operation of the Act.[5] The Act does not require that any notice be given to owners whose existing property interests are about to be extinguished. However, if a person has an interest he or she wishes to preserve, all that is required to preserve the interest is to record a notice before the thirty year period expires.[6]

There are several exceptions to this general rule of extinguishment. Section 72(a) excepts all interests and defects which are inherent in the muniments of which the thirty-year record chain of title is formed.

Section 72(b) provides that a pre-root of title interest is preserved either by recording a proper notice or by the same owner continuously possessing the land for thirty years or more.[7]

---

1. L. Simes and C. Taylor, The Improvement of Conveyancing by Legislation (1960).

2. 1963 Okla.Sess.Laws c. 31, §§ 1–11; 1970 Okla.Sess.Laws c. 92 §§ 1–7.

3. 16 O.S. § 71; Simes, The Improvement of Conveyancing: Recent Developments, 34 O.B.A.J. 2357 (1963).

4. 16 O.S. § 80; Mobbs v. City of Lehigh, 655 P.2d 547, 551 (Okla.1982).

5. 16 O.S. § 73; Mobbs, 655 P.2d at 553.

6. 16 O.S. §§ 72(b), 74. The Act contained a two-year grace period during which owners whose existing property interests might be affected by the legislation could protect their interests by notice recording. 1963 Okla.Sess. Laws c. 31, § 11, repealed 1970; 1970 Okla.Sess. Laws c. 92, § 7.

7. 16 O.S. § 72(b) provides that the notice or possession shall be in accordance with Section 74.

Section 72(c) preserves the rights of an adverse possessor where the period of adverse possession was in whole or in part subsequent to the effective date of the root of title.

Section 72(d) preserves any interest relating to a title transaction which has been recorded subsequent to the effective date of the root of title, but also provides that such a recording shall not revive an interest which has been extinguished.

Section 72(e) excepts the following five types of interests: (1) the rights of reversioners in leases, (2) severed mineral or royalty interests, (3) easements or interests in the nature of easements, or rights granted, reserved or excepted by instruments creating such easements or interests, (4) use restrictions or area agreements which are part of a plan for subdivision development, and (5) interests of the United States.[8]

The Act was expected to "soon provide a much simpler system for appraising titles and transferring real property, shorten the period of examination and eliminate most, if not all, ancient defects which [had theretofore] impaired titles in the state needlessly and sometimes endlessly."[9] A full set of title standards recognize the application and utility of the Act and recommend that it be followed to the fullest extent of its controlling provisions.[10]

## FACTS

The issue of the constitutionality of the Act is before the Court in the form of plaintiff's motion for summary judgment. The material facts are not in dispute.

The subject property is the NE/4 NW/4 of Section 12, Township 15 North, Range 23 West, Roger Mills County, Oklahoma, and the underlying mineral interest which was severed in 1941. Plaintiff's record chain of title originates with two resale tax deeds, one recorded in 1929 to E.M. Cowles covering the East half of the subject property, and one recorded in 1931 to E.M. Lind covering the West half of the subject property.

In 1935 E.M. Lind executed a quitclaim deed to Leo G. Mann covering the west half of the subject property, and in 1941 E.M. Cowles executed a quitclaim deed, also to Leo G. Mann, covering the east half of the subject property.

On December 31, 1941 Leo G. Mann and Jenny L. Mann, husband and wife, executed a warranty deed to the United States of America covering the subject property, reserving a 50–year term mineral interest.

Leo G. Mann died testate. His estate was probated in 1943, distributing his entire interest, one-half to his widow, Jenny Lind Mann, and one-half to his daughter, Lucile M. Bennett (wife of plaintiff).

In 1969 Jenny L. Mann executed a quitclaim deed to her daughter and son-in-law, Lucile M. Bennett and plaintiff Lawrence E. Bennett, covering the severed mineral interest.

Lucile M. Bennett died testate April 11, 1982. Her estate was probated in 1984, distributing all interest to her widower, plaintiff Lawrence E. Bennett.

The United States of America is a named defendant because it has an interest in the subject property, but its interest is not adverse to that of the plaintiff. Defendant United States succinctly stated its position in its response to plaintiff's motion for summary judgment:

> Inasmuch as Plaintiff asserts no claim adverse to that of this Defendant, no objection to that Motion is advanced. The reservation to the United States will

---

8. 16 O.S. § 72(e) incorporates Section 76.

9. Bayse, Clearing Land Titles 446–447 (2d Ed. 1970).

10. *Id.* at 447; *see* Okla. Title Examination Standards 19.1 through 19.13. The Oklahoma Supreme Court has endorsed the Title Examination Standards: "While [the Oklahoma] Title Examination Standards are not binding upon this Court, by reason of the research and careful study prior to their adoption and by reason of their general acceptance among the members of the bar of this state since their adoption, we deem such Title Examination Standards and the annotations cited in support thereof to be persuasive." *Knowles v. Freeman,* 649 P.2d 532, 535 (Okla.1982).

vest in 1991 with the success of Plaintiff to his claim.

Response to Motion For Summary Judgment, October 30, 1987.

TXO Production Corp. was named as a defendant only in plaintiff's second cause of action, which is not the subject of the instant motion. Thus, although plaintiff named TXO in its motion, this order in no way affects that defendant.

The remaining defendants are heirs of Emma A. Beals. Their claim to the subject property originates from a 1917 deed conveying the subject property to James D. Beals and Emma A. Beals. The heirs contend, and plaintiff does not dispute, that Emma A. Beals was, therefore, owner of a half interest in the subject property, and that she died without ever having conveyed away her interest.

In 1985 the district court for Roger Mills County, Oklahoma entered a Journal Entry of Judgment determining the death and heirship of Emma A. Beals. The court found that Emma A. Beals died intestate after May 10, 1917 but prior to December 18, 1924, leaving as her heirs her husband, James D. Beals, who took one-third, and her ten children who took two-thirds (two-thirtieths each). The court expressly declined, however, to determine those heirs' right, title or interest, if any, in the subject property:

> The Court makes no determination of the foregoing persons [sic] right, title or interest, if any, in the SE1/4 of SW1/4 and S1/2 of SE1/4 of Sec. 1 and the W1/2 of NW1/4 and *NE1/4 of NW1/4* of Sec. 12, all in Township 15 North, Range 23 West, Roger Mills County, Oklahoma.

*Whitehouse, et al. v. Beals, et al.*, C–82–114 (Roger Mills County, Oklahoma, May 21, 1985) (Journal Entry of Judgment) (emphasis added).

Between 1929 and 1983 plaintiff's record chain of title was not disturbed or interrupted by any intervening conveyances of record.

## CONSTITUTIONAL CHALLENGE

To recapitulate, the Beals heirs' claim to the subject property originated in 1917. Plaintiff's unbroken record chain of title originated in 1929 and 1931 and continued over fifty years, at least until 1983.[11] The Beals heirs do not contend they fall within any of the Act's exceptions. Thus, unless they prevail on their constitutional challenge to the Act, the Beals heirs' interest is extinguished.

All of the Beals heirs, except Pearl Lacey, are represented by the same counsel. They will be referred to collectively as the Beals. Pearl Lacey is represented by separate counsel. The distinction is relevant only in that they filed separate responses which, though similar, raise different grounds.

The Beals challenge the constitutionality of the Act, but it is difficult to discern the grounds upon which they base their challenge. The cases cited by the Beals deal with 12 O.S. § 93, rather than with the Marketable Record Title Act, and thus are not applicable. After a careful review of the Beals' brief, the Court infers that the Beals base their challenge on the ground that the Act deprives them of their property without due process.

Pearl Lacey challenges the Act under the Due Process Clause of the Fourteenth Amendment on the basis that it fails to provide for notice to persons who may have a claim to the subject property that a root of title has been established and that unless the claimants file a notice of their claim it will be extinguished. She also challenges the constitutionality of using a resale tax deed as a root of title, asserting that there is no showing that the resale was conducted in accordance with the due process requirements of the Constitution. Her argument continues as follows: If the underlying resale was unconstitutional, it cannot be constitutional to use it as the root of title.

The Supreme Court of Oklahoma has not ruled on the constitutionality of the Marketable Record Title Act. In *Mobbs v. City*

---

**11.** The parties refer to a filing in 1983 on behalf of defendants. Such a recordation, assuming it exists, would not, however, revive or give validity to defendants' interest. 16 O.S. § 72(d).

*of Lehigh,* 655 P.2d 547 (Okla.1982), the Court expressly "intimate[d] no view on the constitutionality of the Act because its validity was not framed as an issue in the trial court," [12] and expressly declined to consider whether the Act is self-executing.[13] The Court did, however, construe and apply the Act, "proceed[ing] on the assumption that the Act is constitutional," [14] and held *inter alia* that even a void tax deed may constitute a valid root of title within the meaning of the Act.

Several other jurisdictions have rejected challenges to the constitutionality of Marketable Title Acts similar to Oklahoma's Act.[15] Although those jurisdictions' decisions are not binding upon this Court, they are of interest. Numerous commentators also have discussed the constitutionality of Marketable Title Acts.[16]

One of the earliest and most often cited decisions is *Wichelman v. Messner,* 250 Minn. 88, 83 N.W.2d 800 (1957). In *Wichelman* the Minnesota Supreme Court upheld the Minnesota Marketable Title Act. Over sixty lawyers and law firms throughout Minnesota appeared and filed amicus curiae briefs in the case because of the significance of the decision's potential effect on land titles.[17] The court stated:

> The recordation provisions of the act provide for a simple and easy method by which the owner of an existing old interest may preserve it. If he fails to take the step of filing the notice as provided he has only himself to blame if his interest is extinguished. 'The constitutionality of imposing this duty would seem to have been settled beyond question by the decisions sustaining retroactive recording statutes.' Scurlock, *Retroactive Legislation Affecting Interests In Land,* Mich.Legal Studies, p. 82.

*Wichelman,* 83 N.W.2d at 817 (citations omitted). The court further stated:

> Yielding to the demand to solve the problems created by restrictions unlimited in time, a number of marketable title acts have been passed by various states. Such limiting statutes are considered vital to all who are engaged in or concerned with the conveyance of real property. They proceed upon the theory that the economic advantages of being able to pass uncluttered title to land far outweigh any value which the outdated restrictions may have for the person in whose favor they operate. These statutes reflect the appraisal of state legislatures of the 'actual economic significance of these interests, weighed against the inconvenience and expense caused by their continued existence for unlimited

---

12. *Mobbs,* 655 P.2d at 549.

13. *Id.* at 550, n. 6.

14. *Id.* at 549–550. The only other Supreme Court opinion interpreting the Act is *Allen v. Farmers Union Co-operative Royalty Co.,* 538 P.2d 204 (Okla.1975), where, as in *Mobbs,* the constitutionality of the Act was not an issue.

15. *See, e.g., City of Miami v. St. Joe Paper Co.,* 364 So.2d 439 (Fla.1978); *Amana Society v. Colony Inn, Inc.,* 315 N.W.2d 101 (Iowa 1982); *Presbytery of Southeast Iowa v. Harris,* 226 N.W.2d 232 (Iowa), *cert. denied,* 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 48 (1975); *Tesdell v. Hanes,* 248 Iowa 742, 82 N.W.2d 119 (1957); *Lane v. Travelers Ins. Co.,* 230 Iowa 973, 299 N.W. 553 (1941); *Town of Brookline v. Carey,* 355 Mass. 424, 245 N.E.2d 446 (1969); *Wichelman v. Messner,* 250 Minn. 88, 83 N.W.2d 800 (1957); *Hiddleston v. Nebraska Jewish Education Society,* 186 Neb. 786, 186 N.W.2d 904 (1971).

16. Aigler, *Constitutionality of Marketable Title Acts,* 50 Mich.L.Rev. 185 (1951); Aigler, *A Supplement to "Constitutionality of Marketable Title*

Acts" 1951—1957, 56 Mich.L.Rev. 225 (1957); J. Bado and B. Bado, *The Constitutionality of the Marketable Record Title Act,* 56 O.B.A.J. 1721 (1985); Bayse, Clearing Land Titles (2d Ed.1970 and Supp.1987); Blair and Rhineberger, *Anderson v. Pickering and the Marketable Record Title Act,* 51 O.B.A.J. 2517 (1980); Hicks, *The Oklahoma Marketable Record Title Act,* 9 Tulsa L.J. 68 (1973); Pindar, *Marketability of Titles—Effect of Texaco, Inc. v. Short,* 34 Mercer L.Rev. 1005 (1983); Simes, *The Improvement of Conveyancing: Recent Developments,* 34 O.B.A.J. 2357 (1963); L. Simes and C. Taylor, The Improvement of Conveyancing by Legislation (1960); Comment, *Estates in Land: Effect of Unconstitutionality of Similar Legislation on Oklahoma's Marketable Record Title Act,* 20 Okla.L.Rev. 442 (1967); *see also* Bayse, Land Titles at 369–370, n. 6, for a more complete list of articles.

17. Bayse, Clearing Land Titles at 417 (2d Ed. 1970).

periods of time without regard to altered circumstances.' ... They must be construed in the light of the public good in terms of more secure land transactions which outweighs the burden and risk imposed upon owners of old outstanding rights to record their interests.

*Id.* at 825 (citations omitted).

As set forth earlier in this opinion, the Beals heirs challenge the constitutionality of the Oklahoma Marketable Record Title Act, arguing that the Act violates their due process rights because it does not require that any prior notice be given.

The United States Supreme Court recently addressed, and rejected, the same argument in a closely analogous case, *Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). In *Texaco,* the Court upheld the Indiana Mineral Lapse Act.[18] The Mineral Lapse Act provides that a severed mineral interest that is not used for a period of twenty years automatically lapses and reverts to the current surface owner of the property, unless the mineral owner files a statement of claim in the local county recorder's office.[19] There are three "uses" of mineral interests sufficient to preclude extinction: payment of taxes, actual or attempted production of minerals, and payment of rents or royalties.[20] The statute does not require that any notice be given to a mineral owner prior to a statutory lapse, though it does set forth a procedure whereby a surface owner who has succeeded to the ownership of a mineral estate may give notice after the lapse.[21]

The appellants in *Texaco* were former owners of mineral interests, whose interests lapsed. They challenged the constitu-tionality of the Mineral Lapse Act on a number of grounds, including that the lack of prior notice of the lapse of their mineral rights deprived them of property without due process of law.[22]

In holding that the statute did not deprive appellants of their property without due process of law, the Court first noted that the appellants were presumed to have had knowledge of the terms of the statute. Specifically, they were presumed to have known that an unused mineral interest would lapse unless they filed a statement of claim.[23] Next, the Court noted: "[I]t is essential to recognize the difference between the self-executing feature of the statute and a subsequent judicial determination that a particular lapse did in fact occur." [24] The Court recognized as undisputed that before judgment could be entered in a quiet title action that would "determine conclusively" that a mineral interest has reverted to the surface owner, the full procedural protection of the due process clause must be provided.[25] But, the Court also recognized that the absence of specific notice prior to the lapse does not render ineffective the self-executing feature of the statute.[26]

The Court pointed out the parallelism between the self-executing feature of the Mineral Lapse Act and self-executing statutes of limitations:

The Due Process Clause does not require a defendant to notify a potential plaintiff that a statute of limitations is about to run, although it certainly would preclude him from obtaining a declaratory judg-

---

18. Dormant Mineral Interests Act, commonly known as the Mineral Lapse Act. Ind.Code §§ 32–5–11–1 through 32–5–11–8 (1976), as added by 1971 Ind.Acts, Pub.L. 423, § 1.

19. *Texaco, Inc. v. Short,* 454 U.S. 516, 518, 102 S.Ct. 781, 786, 70 L.Ed.2d 738 (1982).

20. *Id.* at 519, 102 S.Ct. at 786–87.

21. *Id.* at 520, 102 S.Ct. at 787.

22. *Id.* at 522, 102 S.Ct. at 788. The challenge was also based on grounds that the statute effected a taking of private property for public use without just compensation, that an exception contained in the Act for owners of ten or more mineral interests denied them equal protection of law, and that the statute constituted an impairment of contracts in violation of Art. I, § 10, of the Constitution. *Id.* at 522–523, 102 S.Ct. at 788. The Court rejected each challenge.

23. *Id.* at 531–533, 102 S.Ct. at 793–94.

24. *Id.* at 533, 102 S.Ct. at 794.

25. *Id.* at 534, 102 S.Ct. at 794–95.

26. *Id.* at 535, 102 S.Ct. at 795.

ment that his adversary's claim is barred without giving notice of that proceeding. *Texaco,* 454 U.S. at 536, 102 S.Ct. at 796.

Appellants in *Texaco,* like Pearl Lacey in the instant case, relied heavily on the decision in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), wherein the Court considered the constitutional sufficiency of notice given to beneficiaries of a common trust fund of a judicial settlement of accounts by the fund's trustee. In *Mullane,* the Court held the notice was insufficient, stating:

> Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case. *Id.* at 313, 70 S.Ct. at 656–57.

*Texaco,* 454 U.S. at 534, 102 S.Ct. at 795 (quoting *Mullane*).

But in *Texaco,* the Court distinguished *Mullane,* stating that "[t]he reasoning in *Mullane* is applicable to a judicial proceeding brought to determine whether a lapse of a mineral estate did or did not occur, but not to the self-executing feature of the Mineral Lapse Act. The due process standards of *Mullane* apply to an 'adjudication' that is 'to be accorded finality.'" *Texaco,* at 535, 102 S.Ct. at 795.

The Court in *Texaco* then noted that the Court in *Mullane* itself distinguished the situation in which a state enacts a general rule of law governing the abandonment of property, and stated:

> It has long been established that 'laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly,' *Grayned v. City of Rockford,* 408 U.S. 104, 108 [92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972)], but it has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on

his property before that law may affect his property rights.

*Texaco,* 454 U.S. at 535–536, 102 S.Ct. at 795–96.

In sum, the Court held there is no procedural defect in the Mineral Lapse Act. The state may impose on an owner of a mineral interest the burden of using that interest or filing a statement of claim, and it follows inexorably that the state may impose upon him the lesser burden of keeping informed of the use or nonuse of his own property.[27]

For purposes of considering the procedural due process challenge raised by the Beals heirs, the Oklahoma Marketable Record Title Act is closely akin to the Indiana Mineral Lapse Act. Both Acts operate to extinguish property interests unless the claimant files a notice of record. Neither Act requires that any specific notice be given to persons whose interests are about to be extinguished.

■ In accordance with the discussion above, and relying primarily on *Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982), this Court holds that the Oklahoma Marketable Record Title Act does not deprive the Beals heirs of property without due process of law. The lack of specific notice prior to the lapse of the thirty-year period does not render ineffective the self-executing feature of the Act.

With respect to the self-executing feature of the Act, this Court noted, *supra,* that in *Mobbs v. City of Lehigh,* 655 P.2d 547 (Okla.1982), the Supreme Court of Oklahoma expressly declined to rule on the issue of whether the Act is self-executing. Seven years earlier, in *Anderson v. Pickering,* 541 P.2d 1361 (Okla.App.1975) the Oklahoma Court of Appeals stated that the Act is not self-executing, but devoted only five sentences to the Act, as follows:

> The third contention, that the titles were merchantable by virtue of the Merchantable [sic] Title Act, is not applicable here. The authorities which plaintiffs cite concern actions to quiet title. No authority has been found and none has been cited

---

27. *Id.* at 538, 102 S.Ct. at 796–97.

which would require a vendor to purchase real property where there is a defective title. The Merchantable [sic] Title Act provides a method through which title may be quieted statutorily. It is not self-executing, nor does it provide a perfect remedy for every instance.

*Anderson v. Pickering* at 1364–65. The Court of Appeals did not elaborate and that portion of the decision has been criticized.[28]

■ In the absence of a state supreme court ruling, a federal court is not compelled to follow an intermediate court decision if other authority convinces the federal court that the state supreme court would decide otherwise. *Delano v. Kitch,* 663 F.2d 990, 996 (10th Cir.1981). In light of *Texaco, Inc., v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982), this court is convinced that the Oklahoma Supreme Court, if presented with the issue, would decide that the Act is self-executing and that the self-executing feature is not unconstitutional, but that the self-executing feature does not determine conclusively that an interest has been extinguished. *See Texaco,* 454 U.S. at 533–536, 102 S.Ct. at 794–96.

Thus, only to the extent *Anderson* stands for the proposition that the Act does not determine conclusively that an interest has been extinguished, this Court follows *Anderson.*

■ The Court can readily dispose of Pearl Lacey's second argument, regarding the use of a resale tax deed as a root of title. This Court has held that the Marketable Record Title Act is constitutional. The Oklahoma Supreme Court expressly held in *Mobbs v City of Lehigh,* 655 P.2d 547 (Okla.1982), presuming the Act is constitutional, that a resale tax deed, even one that is void *ab initio,* can serve as a valid root of title within the meaning of the Marketable Record Title Act. Accordingly, this Court holds that the use of a tax resale deed as a root of title does not violate the Constitution.

28. *See, e.g.,* Blair and Rhineberger, *Anderson v. Pickering and the Marketable Record Title Act,*

## CONCLUSION

The Oklahoma Marketable Record Title Act does not deprive defendants of property without due process of law. The lack of specific notice prior to the lapse of the thirty-year period does not render ineffective the self-executing feature of the Act. The use of a tax resale deed as a root of title does not violate the Constitution.

Accordingly, plaintiff's Motion for Summary Judgment is GRANTED.