752 F.2d 508
 Blue Sky L. Rep. P 72,160, Fed. Sec. L. Rep. P 91,910
R.S. COWLES and Gloria B. Cowles, Plaintiffs-Appellants,
v.
DOW KEITH OIL & GAS, INC., an Oklahoma Corporation, and Dow
Keith, Individually, Defendants-Appellees.
 No. 83-1464.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 16, 1985.
 
 Michael W. Thom and Jimanne H. Mays of Speck, Philbin, Fleig, Trudgeon & Lutz, Oklahoma City, Okl., for plaintiffs-appellants.
 Robert W. Pittman, Oklahoma City, Okl., for defendants-appellees.
 Before BARRETT, DOYLE and McKAY, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.
 
 
 2
 This action was initiated by Appellants, R.S. Cowles and Gloria B. Cowles (the Cowles), against Appellees, Dow Keith and Dow Keith Oil & Gas, Inc. (Dow Keith Corp.), for alleged violations of state and federal securities acts, breach of contract, and conversion arising out of the sale to the Cowles of working interests in oil and gas wells located in Oklahoma. From a judgment entered in favor of Dow Keith and Dow Keith Corp. following a nonjury trial, the Cowles appeal.
 
 
 3
 Most of the facts relevant to this appeal were stipulated to by the parties and incorporated into the district court's Findings of Fact and Conclusions of Law. Those facts will be briefly summarized.
 
 
 4
 In 1980 and 1981, the Cowles purchased fractional, or "working," interests from Dow Keith Corp. in three oil and gas leases: the Fuqua lease; the Gibbs lease; and the Smith lease. These interests constitute "securities" as defined in the Oklahoma Securities Act (OSA), the Federal Securities Act of 1933 (FSA), and the Federal Securities Exchange Act of 1934 (FSEA). These interests were not, however, ever registered with either the Oklahoma Securities Commission or the Federal Securities Exchange Commission. Also, neither Dow Keith nor Dow Keith Corp. was registered at the time these interests were sold to the Cowles in any capacity--broker, agent, or otherwise--with either the Oklahoma Securities Commission or the Federal Securities and Exchange Commission. Dow Keith Corp. was the "issuer" of the securities sold to the Cowles and Dow Keith was a "control person" with regard to such sales as those terms are defined in the OSA, the FSA, and the FSEA.
 
 
 5
 Neither Dow Keith nor Dow Keith Corp. ever performed or obtained any geological studies with respect to wells drilled or to be drilled on these leases. Consequently, investors, including the Cowles, were never provided any geological data with regard to these wells. Some of the investors in these leases resided outside the State of Oklahoma at the time they purchased fractional interests, and both the mails and the telephone system were used in the sale of working interests in the Fuqua, Smith, and Gibbs leases.
 
 
 6
 Based on these facts and others that will be developed, the Cowles brought suit against Dow Keith and Dow Keith Corp. alleging violations of Section 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. Sec. 78j(b) (1976), and Rule 10b-5 promulgated thereunder, 17 C.F.R. Sec. 240.106-5; Section 12(2) of the Securities Act of 1933, as amended, 15 U.S.C. Sec. 77 l (2) (1976); Sections 408(a)(1) and 408(a)(2) of the Oklahoma Securities Act, 71 Okla.Stat. Sec. 408 (1983); breach of contract; and conversion. The district court found that the Cowles had not sustained their burden of proof under either of the Securities Acts. It also resolved the breach of contract and conversion claims against the Cowles.
 
 
 7
 On appeal, the Cowles challenge a number of the district court's findings. It will, therefore, be instructive for us to set forth the standards to be employed when reviewing such findings. An appellate court must view the evidence adduced in the trial court in the light most favorable to the prevailing party. Joyce v. Davis, 539 F.2d 1262, 1264 (10th Cir.1976). Where trial is to the court, as it was here, the resolution of factual issues and conflicting evidence lies solely within the province of the district court. Harmon City, Inc. v. United States, 733 F.2d 1381, 1385 (10th Cir.1984). Such findings, even when they involve expert testimony, are presumptively correct and should not be set aside on appeal unless they are clearly erroneous. Colon-Sanchez v. Marsh, 733 F.2d 78, 80-81 (10th Cir.1984). A finding of fact is "clearly erroneous" if it is without factual support in the record, Farmers & Bankers Life Ins. Co. v. Allingham, 457 F.2d 21, 24 (10th Cir.1972), or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made. Clancy v. First Nat'l Bank of Colorado Springs, 408 F.2d 899, 903 (10th Cir.1969), cert. denied, 396 U.S. 958, 90 S.Ct. 430, 24 L.Ed.2d 422 (1969).
 
 
 8
 The Cowles maintain that the district court erred in finding that the fractional interests (securities) sold to them by Dow Keith Corp. were exempted from the registration requirements of OSA.[1] Specifically, they contend that Dow Keith and Dow Keith Corp. did not satisfy each of the elements of 71 Okla.Stat.Ann. Sec. 401(b)(15) (1983)[2] as to each investor in the Fuqua, Smith, and Gibbs leases. While it is true that establishing an exemption is an affirmative defense under Oklahoma law, State v. Hoephner, 574 P.2d 1079, 1081 (Okl.Cr.1978), the district court found, as the Cowles concede, that Dow Keith and Dow Keith Corp. had brought themselves within Sec. 401(b)(15). Therefore, we cannot disturb the district court's finding unless it is clearly erroneous.
 
 
 9
 The Cowles' argument apparently is that the district court's finding that the sales of working interests were exempt was clearly erroneous because Sec. 401(b)(15)A 1, 2, and 4 were not sufficiently established. The Cowles contend subsections 1 and 4 were not satisfied because Dow Keith and Dow Keith Corp. did not prove they reasonably believed each buyer was purchasing for investment and that each buyer was capable of evaluating and able to bear the risks of the investment. We disagree. As the district court recognized, this is not a typical securities fraud case in that the Cowles and the other investors initially contacted Dow Keith seeking to invest, rather than the reverse. Finding of Fact # 16. Several of the investors, including the Cowles, learned about Dow Keith and his operations from Mr. Cowles' dentist, Dr. Ralph Shadid, who already was one of Dow Keith's investors when the Cowles learned of Dow Keith's operations. R.Vol. IV at 20-21; 121-127. These facts, together with the following testimony of Dow Keith on cross-examination, convince us that Dow Keith could reasonably have believed the buyers were purchasing for investment and were able to evaluate and bear financially the risks of those investments:
 
 
 10
 Q (Mr. Pittman): Have you ever sold any of these interests by installment?
 
 
 11
 A (Dow Keith): No.
 
 
 12
 Q So that ...
 
 
 13
 A You're talking about installment over a period of months?
 
 
 14
 Q Yes.
 
 
 15
 A No.
 
 
 16
 Q So that you did have an indication from all of these people that they had the cash to pay for the interests that they wanted to buy.
 
 
 17
 A I did.
 
 
 18
 Id. at 157.
 
 
 19
 The Cowles argue that Sec. 401(b)(15)A 2 was also not established by Dow Keith and Dow Keith Corp. It was admitted that costs charged by Dow Keith and Dow Keith Corp. to drill and complete certain wells were excessive. The Cowles contend these overcharges were disguised commissions. The district court found, and based on our review of the record we agree, that these overcharges "were inadvertent and unintentional and were corrected when discovered and resulted in no damage to the [Cowles]." Finding of Fact # 21. As such, they were not "disguised commissions" as alleged by the Cowles. Consequently, we hold that the district court's finding that the sales of working interests here involved were exempt from registration under OSA was not clearly erroneous.
 
 
 20
 For similar reasons, we agree with the district court's finding that there was no public offering triggering the registration requirements of the Federal Securities Acts. In G. Eugene England Found. v. First Fed. Corp., 663 F.2d 988, 990 (10th Cir.1973), this Court stated that "[i]n determining what constitutes a public offering, ... 'the general criterion is whether the particular persons affected stand in need of the protection of the Act,' " quoting Garfield v. Strain, 320 F.2d 116, 119 (10th Cir.1963). As noted above, the district court found this not to be a typical securities case because the investors contacted Dow Keith initially. The district court further found that, because Dow Keith conducted "a minor operation" drilling only "shallow wells," the Cowles "had about as much means of acquiring information and knowledge as did the defendant." Finding of Fact # 18. We believe there is ample support for these findings in the record. Thus, we agree that the Cowles were not persons in need of the protections of the Securities Acts. Consequently, we hold that the district court's finding that there was no public offering was not clearly erroneous.
 
 
 21
 As noted earlier, Dow Keith and Dow Keith Corp. did not provide any of the investors, including the Cowles, any geological or similar data with respect to wells drilled or to be drilled on the leases involved here. The Cowles contend that failure to provide such information constitutes omission of a "material fact" in violation of Rule 10b-5, 17 C.F.R. Sec. 240.10b-5. The district court found, and we agree, however, that although geological and similar data might be "material" if Dow Keith were a "big operator drilling deeper holes," such information was not material under the facts of this case. Involved here was a small operator conducting a minor operation in the drilling of shallow--approximately one thousand feet deep--wells. Though the Cowles may have been unsophisticated, they had, as the district court found, "about as much means of acquiring information and knowledge as did [Dow Keith]." Finding of Fact # 18. The district court's finding that failure to provide geological and similar information was not the omission of a "material fact" was not, therefore, clearly erroneous.
 
 
 22
 The Cowles assert that the district court erred in determining that no fraud, misrepresentation or deception was employed by Dow Keith and/or Dow Keith Corp. in inducing the Cowles to purchase interests in the leases. Brief of Appellants at 33. Specifically, they state that "[n]o testimony was adduced by the counsel of Keith Corp. that there was no intent by Keith Corp. or Keith to defraud their investors." Id. at 36. They apparently would have us overlook, however, the following testimony of Dow Keith on cross-examination:
 
 
 23
 Q (Mr. Pittman): Have you ever told anyone that a lease or a prospective well was a lead cinch or a lead-pipe cinch?
 
 
 24
 A (Mr. Dow Keith): There ain't one of them, no.
 
 
 25
 Q Have you ever told anyone there is?
 
 
 26
 A Not in that sense, no.
 
 
 27
 Q Have you ever told people that all indications are that there is some oil down there and that we can drill and see what we can produce?
 
 
 28
 A I have told them that there should be some oil down there, and whether it would be feasible for us or not; that we would have to drill and see. You never know until you drill them.
 
 
 29
 Q Do you feel that you have misled or lied to your investors in any way in regard to these three leases?
 
 
 30
 A No, sir.
 
 
 31
 Q Did they have all of the information to make their decision that you had to make your decision to be the primary corporation in the corporation making its decision?
 
 
 32
 A Yes. They knew just about everything I did.
 
 
 33
 R.Vol. IV at 128-129. We hold that the district court did not err in concluding that no fraud, misrepresentation, or deception was employed by Dow Keith and/or Dow Keith Corp.
 
 
 34
 The Cowles contend that Dow Keith and Dow Keith Corp. breached their operating agreement "by acting arbitrarily and capriciously and failing to exercise their discretion and good faith" in deciding to complete two Gibbs wells. Brief of Appellants at 18. In deciding to complete these wells, Dow Keith testified that he "relied on a lot of people," including engineers. R.Vol. IV at 98. He relied on core samples as well as electrical logs, which measure the thickness of potential producing zones, in deciding whether to complete the wells. Id. at 96-101. Based on this information, the district court found, and we agree, that completion of the Gibbs wells "was a reasonable business venture, and although it did not pay out, the defendant could, and likely would, have been soundly criticized had he not completed these two wells." Finding of Fact # 22.
 
 
 35
 Finally, the Cowles claim that Dow Keith's removal of the pumpjack and set pipe from the Smith # 2 well to the Smith # 4 well without notice to the Cowles constitutes conversion because they owned an interest in the # 2 well but not the # 4 well. Brief of Appellants at 23. Dow Keith testified regarding his removal of the pumpjack and tubing. (Contrary to the Cowles' contentions, Dow Keith admitted removing tubing, not set pipe. R.Vol. IV at 140.) He testified that: the Cowles had interests in three wells on the Smith lease, but they declined to participate in a fourth; he drilled the fourth well, using the pumpjack and tubing from well # 2, hoping to increase production from the entire Smith lease while at the same time saving costs; and though the Cowles did not share in the costs of well # 4 they continued to share in its production because he had only one tank battery to put production into from all four Smith wells. Id. at 139. Under these circumstances, the district court concluded, and we agree, that although it was "poor business judgment" for Dow Keith to move equipment from one well to another, still no conversion occurred because he did not intend to harm anyone but instead did "what he believed would be helpful to everyone in saving costs." Finding of Fact # 19.
 
 
 36
 Nonetheless, even assuming that Dow Keith's removal of the pumpjack and tubing was somehow "illegal" or "wrongful," still the Cowles' conversion claim must fail because, by Mr. Cowles' testimony, he was not damaged by such removal, See Benton v. Ortenberger, 371 P.2d 715, 717 (Okla.1962) (Plaintiff in conversion action has burden of proving "the damages sustained by him"). Cowles testified:
 
 
 37
 Q (Mr. Pittman): What do you claim you lost, if anything, as the result of the pump being moved from the Smith 2 to the Smith 4?
 
 
 38
 A (Mr. Cowles): What is the future of the Smith 2? You know, as far as I was concerned, it was making as much oil as the Smith 4 is now. Within $20 of the same amount.
 
 
 39
 Q You're saying that your income increased $20 per month by moving the pump from the Smith 2 to the 4?
 
 
 40
 A Yes.
 
 
 41
 Q So that you didn't lose; you gained.
 
 
 42
 A No. But I have been billed, and he says I owe him $1700 or whatever it costed to move it. He billed me for $1700 or a part of the Smith 4. He shut down the one that I had already paid for part of.
 
 
 43
 Q But you have told him you are not going to pay, and that you're not going to participate in the Smith 4.
 
 
 44
 A Right.
 
 
 45
 Q So you haven't been out that $1750.
 
 
 46
 A Well, but I have been out whatever the production is on the Smith 2.
 
 
 47
 Q But you said the production was less than the production on the 4.
 
 
 48
 A Right.
 
 
 49
 Q Which you're sharing in.
 
 
 50
 A Right.
 
 
 51
 R.Vol. IV at 60-61.
 
 
 52
 AFFIRMED.
 
 McKAY, Circuit Judge, dissenting:
 
 53
 The question in this case is straightforward. Is there sufficient evidence in the record to establish that defendants, sellers of securities who claim an exemption from securities registration requirements under 71 Okla.Stat.Ann. Sec. 401(b)(15), have carried their burden of proving that each and every investor was capable of evaluating the risk of the investment and that each and every investor was capable of bearing the economic risk of the investment. The evidence offered on this point consisted exclusively of Mr. Keith's testimony that all the investors initially contacted him, on the advice of friends, seeking to invest, and that none of the securities were sold on installment. If this kind of testimony alone could establish the exemption, the registration requirements of the Act would be emasculated. In view of the way this exemption has been treated by the Oklahoma cases, I do not believe we can properly treat this as sufficient evidence on these two critical issues. See Lambrecht v. Bartlett, 656 P.2d 269 (Okla.1982), and Parrish v. Ben-Jon Oil Co., 666 P.2d 1308 (Okla.Ct.App.1983).
 
 
 54
 The defendants in this case had the burden of proving all elements of the claimed exemption, including the sophistication of each investor. Parrish, 666 P.2d at 1309; Lambrecht, 656 P.2d at 272. Their evidence simply did not meet this burden. Indeed, Mr. Keith admitted that he had not even spoken with some of the investors. Record, vol. 4, at 148-50. After examining the decision of the trial court, it is apparent that what impressed the court was not the sophistication of the investors but rather the lack of sophistication of the sellers of the securities. There is nothing in the Oklahoma cases to suggest that this criterion has any bearing on the determination of whether the very limited 401(b)(15) exemption is available.
 
 
 55
 I would reverse the decision of the trial court.
 
 
 
 [1]
 71 Okla.Stat.Ann. Sec. 301 (1965) provides:
 "It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 4a.
 
 
 [2]
 (15)A. Any sale from or in this state to not more than thirty-two persons of a unit consisting of interests in oil, gas or mining titles or leases or any certificate of interest or participation, or conveyance in any form of an interest therein, or in payments out of production pursuant to such titles or leases, whether or not offered in conjunction with, or as an incident to, an operating agreement or other contract to drill oil or gas wells or otherwise exploit the minerals on the particular leases, whether or not the seller or any purchasers are then present in the state, if:
 
 
 [1]
 the seller reasonably believes that all buyers are purchasing for investment;
 
 
 [2]
 no commission or other remuneration is paid or given directly or indirectly for the solicitation of any such sale excluding any commission or remuneration paid or given by and between parties each of whom is engaged in the business of exploring for or producing oil and gas or other valuable minerals;
 
 
 [3]
 no public advertising or public solicitation is used in any such solicitation or sale; and
 
 
 [4]
 sales are effected only to persons the seller has reasonable cause to believe are capable of evaluating the risk of the prospective investment and able to bear the economic risk of the investment; but the Administrator, by rule or order, as to any specific transaction, may withdraw or further condition this exemption or decrease the number of sales permitted or waive the conditions in divisions 1, 2 and 3, with or without substitution of a limitation on remuneration