902 F.2d 1496
 RAYDON EXPLORATION, INC., an Oklahoma Corporation, Plaintiff-Appellee,
v.
Frank A. LADD, an Individual, and Dudley R. Stanley, an
Individual, d/b/a H & L Operating Co., a Texas
Partnership, Defendants-Appellants.
 No. 88-2872.
 United States Court of Appeals,
Tenth Circuit.
 May 7, 1990.
 
 1
 James M. Peters, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, Okl., for defendants-appellants.
 
 
 2
 James U. White, Jr., White, Coffey, Galt & Fite, P.C., (Jennifer E. Irish with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.
 
 
 3
 Before LOGAN and BALDOCK, Circuit Judges, and SAFFELS,* District Judge.
 
 
 4
 SAFFELS, District Judge.
 
 
 5
 This diversity jurisdiction case arises from an agreement involving oil and gas development on two sections of land. After a two day court trial, the United States District Court for the Western District of Oklahoma[1] found that the defendants-appellants Frank A. Ladd and Dudley R. Stanley, d/b/a H & L Operating Co. (H & L) failed to perform an express condition of its agreement with plaintiff-appellee Raydon Exploration, Inc. (Raydon). Therefore, the district court granted Raydon's request for equitable relief rescinding the agreement and further ordering Raydon to return to H & L the partial consideration H & L had paid to Raydon, $60,264.93. In this appeal, H & L challenges many of the findings of the trial court and its order rescinding the agreement.
 
 STATEMENT OF FACTS
 
 6
 The parties in this case entered into a letter agreement dated August 21, 1987, in which the parties agreed to assign certain mineral interests in Sections 21 and 28, Township 6 North, Range 15 ECM, Texas County, Oklahoma. In the agreement, Raydon promised to assign an interest in Section 21 to H & L, and H & L promised to obtain and assign an interest in Section 28 to Raydon. Raydon acquired its interest in Section 21 from Sullivan & Co., pursuant to a farmout agreement, prior to August 21, 1987. H & L intended to obtain a farmout agreement on Section 28 from Mobil. On August 27, 1987, H & L discovered that Mobil no longer had the sought-after rights in Section 28, but that the rights were actually owned by Edward C. Cox. After learning this fact, H & L began its attempt to acquire a farmout agreement from Cox for the rights in Section 28.
 
 
 7
 On August 28, 1987, Gilbert Brown of H & L informed Tom Gray of Raydon that Mobil did not have the deep mineral rights in Section 28, but that the rights were owned by Cox. Raydon indicated that it would continue with the agreement and H & L could seek the farmout from Cox.
 
 
 8
 On September 4, 1987, H & L accepted and executed the letter agreement dated August 21, 1987, and returned it with a transmittal letter written by Frank Ladd of H & L. The transmittal letter stated that H & L would attempt to obtain a farmout agreement from Cox instead of Mobil, but no assurances could be provided that the farmout agreement from Cox would be obtained.
 
 
 9
 H & L continued to try to negotiate a farmout agreement on Section 28 from Cox. On September 27, 1987, H & L forwarded to Raydon $60,246.93, representing H & L's share of drilling costs for the well to be drilled on Section 21. The letter agreement between the parties provided that each party would be responsible for their proportionate share of drilling costs for test wells in the section of land in which they were to acquire an interest. The test well on Section 21 was logged and tested in late October 1987 and was shown to be a well of very good commercial capabilities. On November 3, 1987, H & L attempted to participate in the completion costs of the well on Section 21. Raydon, however, refused the tendered check and returned it on November 9, 1987. After some attempt to obtain a farmout agreement with Cox, H & L failed to get any interest in the mineral rights in Section 28. In March 1988, Raydon discovered that Cox had decided to drill a well in Section 28 itself, instead of assigning the mineral interest. On April 5, 1988, Raydon notified H & L that it intended to rescind the agreement and tendered the return of the initial drilling costs that H & L had paid Raydon. H & L refused the tender.
 
 
 10
 After hearing the evidence presented at the bench trial, the district court found that the agreement between the parties failed because of a failure of an express condition, H & L's promise to obtain and assign an interest in Section 28. Since H & L failed to perform this part of the agreement, the district court rescinded the contract and ordered Raydon to return the partial consideration that H & L had provided to Raydon, the $60,264.93 drilling cost.
 
 
 11
 On appeal, H & L argues that the trial court misunderstood the agreement between the parties. H & L contends that the September 4, 1987, transmittal letter was a counteroffer to Raydon's offer proposed in the August 21, 1987, letter. H & L contends that this counteroffer was accepted when Raydon accepted H & L's payment of drilling cost for the Section 21 well. Also, H & L contends that the agreement between the parties simply required H & L to use its best efforts to obtain an interest in Section 28 and did not obligate H & L to obtain and assign such an interest. Therefore, H & L contends that it performed its obligation to use best efforts as called for in the agreement. Finally, H & L contends that the relief of rescission granted by the district court is an inappropriate remedy in this case.
 
 STANDARD OF REVIEW
 
 12
 On appeal, H & L challenges many of the district court's findings. This court must view the evidence presented to the trial court in the light most favorable to the prevailing party. Cowles v. Dow Keith Oil & Gas, Inc., 752 F.2d 508, 510 (10th Cir.1985), cert. denied 479 U.S. 816, 107 S.Ct. 74, 93 L.Ed.2d 30 (1986). If a trial is to the court, as in the present case, the resolution of factual issues and conflicting evidence lies solely within the province of the district court. Id. at 511 (citing Harmon City, Inc. v. United States, 733 F.2d 1381, 1385 (10th Cir.1984)). The findings of the district court are presumed correct and should not be set aside on appeal unless they are clearly erroneous. Cowles, 752 F.2d at 511. A finding of fact is "clearly erroneous" if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made. Id.
 
 ANALYSIS
 
 13
 First, appellant H & L contends that the trial court misunderstood the agreement between the parties. In essence, the trial court found that the August 21, 1987, letter memorialized an agreement of exchanged promises between the parties. H & L promised to obtain and trade an interest in Section 28 to Raydon and Raydon promised to trade an interest in Section 21 to H & L. Each party promised to bear a proportional share of the drilling costs for the test well drilled on the section of land in which it was to acquire an interest in the trade. After reviewing the record on appeal, it is clear the promises exchanged in the agreement are mutually dependent conditions to be performed at the same time. Neither party is bound to perform unless the other contemporaneously tenders performance. See Anderson v. Pickering, 541 P.2d 1361, 1365 (Okla.App.1975). The district court found that H & L failed to perform its promise to obtain an interest in Section 28, and therefore, H & L failed to comply with an express condition of the parties' agreement. We find that sufficient evidence exists to support this finding. Since an express condition of the contract failed, the district court was correct in ruling that Raydon was entitled to rescission of the contract.
 
 
 14
 H & L also contends that its September 4, 1987, transmittal letter sent with the return of the August 21, 1987, letter agreement, which H & L had executed, was actually a counteroffer which modified the agreement's terms. H & L contends that pursuant to the terms of the counteroffer, H & L made no promise to obtain an interest in Section 28, because of the "no assurance" language of that letter.[2] The trial court, however, treated the August 21 letter as containing the complete terms of the parties' agreement.
 
 
 15
 Under Oklahoma contract law, an acceptance generally will not bind the parties and create a contract unless it is unconditional, identical to the offer, and does not modify, delete or introduce any new terms into the offer. Ollie v. Rainbolt, 669 P.2d 275, 280 (Okla.1983). Notwithstanding this rule, an acceptance must receive a reasonable construction. Immaterial variances between the offer and acceptance will be disregarded and the mere addition of a collateral or immaterial matters will not prevent the formation of a contract. Foster v. West Publ. Co., 77 Okla. 114, 186 P. 1083, 1084 (1920), cited with approval in Price v. Oklahoma College of Osteopathic Medicine, 733 P.2d 1357, 1362 n. 8 (Okla.App.1986); see also Farmers' Produce Co. v. McAlester Storage, 48 Okla. 488, 150 P. 483, 485 (1915); Wallerius v. Hare, 200 Kan. 578, 438 P.2d 65, 68-69 (1968); and Restatement (Second) of Contracts Sec. 61 (1979).
 
 
 16
 This court finds that there is sufficient evidence in the record to support the trial court's finding that the parties intended to enter into a definite agreement memorialized by the August 21, 1987, letter agreement. The additional language in the letter transmitting H & L's acceptance, i.e. that H & L was trying to obtain the farmout agreement from Cox rather than Mobil and that H & L had no assurance of getting the farmout agreement, are collateral matters to the agreement between the parties. The trial court's finding that the terms of the parties' contract were set out in the August 21, 1987, letter agreement is not clearly erroneous. This court's review of the evidence does not support H & L's contention that the letter should have been treated as a counteroffer.
 
 
 17
 Next, H & L contends that the trial court was wrong in treating the August 21 letter agreement as obligating H & L to obtain an interest in Section 28. H & L argues that the terms of the August 21 letter agreement only obligated H & L to use its best efforts in attempting to obtain such an interest. The "best efforts" language appears in the August 21, 1987, letter agreement. The letter states that "H & L is using its best efforts to obtain terms no less favorable than those of Sullivan and Co. above referenced." (emphasis added). This phrase refers to H & L's efforts to obtain terms in the farm-out agreement it was to negotiate on Section 28. H & L promised to use its best efforts to obtain terms in the farmout agreement on Section 28 no less favorable than the terms of the Sullivan/Mobil farmout agreement on Section 21. In Finding of Fact No. 1, the trial court found that the "best efforts" phrase "does not state H & L will use its best efforts to obtain the farmout itself, but rather to obtain terms thereto." This finding is not clearly erroneous. A plain reading of the agreement and testimony presented at trial clearly support the trial court's finding.
 
 
 18
 Finally, H & L contends that rescission was inappropriate in this case. In order to constitute grounds for rescission under Oklahoma law, failure of performance must defeat the object of the contract. Rescission is appropriate when the failed future performance was an essential part of the bargain. See Stoltz, Wagner & Brown v. Cimarron Exploration Co., 564 F.Supp. 840, 850 (W.D.Okla.1981); Davis v. Hastings, 261 P.2d 193, 195 (Okla.1953). Also, a party seeking rescission of a contract must exercise reasonable diligence and rescind promptly on discovery of facts entitling rescission. The party seeking rescission must restore to the other party everything of value which was received under the contract. 15 Okla.Stat.Ann. Sec. 235; see also Burke v. Donnermeyer, 448 P.2d 446 (Okla.1968).
 
 
 19
 In this case, the object of the parties' contract was an exchange of deep mineral rights in Sections 21 and 28. H & L's failure to obtain and assign an interest in Section 28 to Raydon clearly defeated the central object of the August 21, 1987, letter agreement. Therefore, the trial court was correct in finding that rescission of the contract was an appropriate remedy in this case. H & L also contends that Raydon was dilatory in seeking rescission. Essentially, H & L contends that if Raydon was going to rescind the contract, it should have done so before the test well on Section 21 proved to be a well of commercial capability. The evidence presented to the trial court supports the finding that Raydon acted promptly upon learning of H & L's inability to obtain the farmout agreement from Cox. Furthermore, Raydon does not have an appropriate remedy at law. Therefore, the remedy of rescission of the agreement between the parties is an appropriate remedy in this case.
 
 
 20
 For all the foregoing reasons, this court finds that the judgment of the lower court should be AFFIRMED.
 
 
 
 *
 The Honorable Dale E. Saffels, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 The Honorable Lee R. West
 
 
 [2]
 The September 4, 1987, transmittal letter reads, in part, as follows:
 We [H & L] have executed the enclosed herewith one copy of your letter of 8-21-87.
 As we have advised you, Mobil doesn't own the leasehold rights in Section 28-6N-15ECM as they were assigned to Cox Oil and Gas, Inc. some years ago. We are currently negotiating a farmout with Cox on terms no less favorable than those of Sullivan and Company. We have no final assurance that this farmout can be obtained, however, and shall keep you informed as to our progress.