86 F.3d 1167
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Judith M. ZOUCK; James Q. May, Jr.; Prudence M. Plusch;
and Marianna May Wood Richardson, individually and as
Personal Representative of the Estate of Mary Ann Wood,
a/k/a Mary Ann Doorley, Plaintiffs-Appellants,
v.
ANTLERS RANCH, INC., a Wyoming corporation; Michael Q. May;
MQM, Inc., a Kentucky corporation, and Security
State Bank of Basin, a Wyoming
corporation, Defendants-Appellees,
 No. 94-8032.
 United States Court of Appeals, Tenth Circuit.
 April 29, 1996.
 
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 1
 Before TACHA and McWILLIAMS, Circuit Judges, and BURRAGE*, District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 BURRAGE, District Judge.
 
 
 4
 Appellants, Judith M. Zouck, James Q. May, Jr., Prudence M. Plusch and Marianna May Wood Richardson appeal from the district court's amended findings of fact and conclusions of law and judgment. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 5
 A summary of the relevant facts is as follows. Appellee, Antlers Ranch, Inc. ("Antlers"), is a closely-held Wyoming ranch corporation. Its principal business is the operation of a large cattle ranch near Meeteetse, Wyoming. The ranch was originally established by the great-grandfather of Appellants and Appellee, Michael Q. May ("May"), in 1899 and is one of the oldest family-owned ranches in Wyoming. Although the ranch was established in 1899, it was first incorporated on April 10, 1959. At that time, Antlers' stock was held mostly by Mary Q. May, the grandmother of Appellants and May. Ernest R. May, Jr., May's father, also held some of the stock issued by Antlers.
 
 
 6
 On December 1, 1964, Mary Q. May died. Ernest R. May, Jr., who was Antlers' manager at the time, inherited stock from his mother, which when combined with stock previously held gave him approximately 60% of Antlers' stock. Ernest R. May, Jr.'s brother and sister, James Q. May, Sr. and Mary Ann May Doorley, who had previously left Antlers for the East Coast, each inherited approximately 20% of Antlers' stock. Appellants, Judith M. Zouck, James Q. May, Jr., Prudence M. Plusch and Marianna May Wood Richardson are the children and successors-in-interest to James Q. May, Sr. and Mary Ann May Doorley.
 
 
 7
 Ernest R. May, Jr. died unexpectedly on September 18, 1965 and May's mother, Donna May, now known as Donna May McClellan, inherited the Antlers' stock. May became the manager of the ranch and a member of its board of directors.
 
 
 8
 Prior to his death, Ernest R. May, Jr., with his wife, Donna, incorporated another entity known as the 3M Ranch Corporation ("3M"). The corporation owned two farms which engaged in farming and raising livestock feed. The livestock feed was used by Antlers to feed its cattle. While Ernest R. May, Jr. and his wife were initially the sole shareholders of 3M, May and his two brothers later became shareholders.
 
 
 9
 On September 28, 1966, May and his mother signed a contract, wherein May agreed to purchase his mother's 3M shares. May specifically agreed to pay his mother $300.00 per month until her death or September, 1991, whichever first occurred. May, however, made only two payments to his mother pursuant to the 1966 agreement from his personal funds. Until 1975, all other payments were made by 3M. During that time, May was 3M's sole shareholder as he had also purchased the shares of his two brothers.
 
 
 10
 In a written contract dated September 25, 1969, 3M purchased all of Donna May McClellan's shares of stock in Antlers. Under the contract, Donna May McClellan was to receive $15,000.00 per year from 3M for as long as she lived, plus room, board and insurance. Through its purchase, 3M became the owner of 61% of Antlers. May, 3M's sole owner, already had 30 shares of stock in Antlers. Thus, as a result of 3M's purchase of Donna May McClellan's stock, May held directly or indirectly 64% of Antlers' stock.
 
 
 11
 Until 1975, the payments to Donna May McClellan under the 1969 agreement were paid from 3M's corporate funds. After January, 1975, all payments were made from Antlers' corporate funds.
 
 
 12
 From 1965 through 1970, Mary Ann May Doorley, May's aunt, periodically became dissatisfied with May's management of Antlers. She employed two attorneys to investigate the affairs of the ranch. The attorneys inspected the books on July 17, 1970. Subsequently, on March 8, 1973, in contemplation of a shareholders' derivative suit, attorneys representing Mary Ann May Doorley and James Q. May, Sr. conducted an unannounced three day inspection of Antlers and 3M's books, records, ledgers and journals. The investigation focused on whether the dealings between Antlers and 3M were conducted at arms-length, whether May had used Antlers' assets to pay for the 3M stock he purchased from his mother under the 1966 agreement, whether May had used Antlers' assets to pay for Antlers' stock purchased from his mother under the 1969 agreement and whether May had diverted corporate funds from Antlers for personal use.
 
 
 13
 After the investigation, James Q. May, Sr. and his attorney concluded that May was properly conducting the corporate affairs of Antlers. However, James Q. May, Sr.'s attorney suggested that to eliminate any future areas of potential conflict, 3M's assets should be merged into Antlers. Acting on the suggestion, Antlers' shareholders approved a merger of 3M into Antlers on November 15, 1974.
 
 
 14
 The share allocation in the surviving corporation was based on the value of the assets each party contributed to the merger. May contributed assets in the amount of $2,749,258.00, which represented 82% of the total value contributed to Antlers by all of its shareholders. Appellants, Judith M. Zouck, James Q. May, Jr. and Prudence M. Plusch, who had received some stock as a gift in 1973, Mary Ann May Doorley and James Q. May, Sr., contributed the remaining value of approximately 18% through their Antlers' shares.
 
 
 15
 After the merger, Antlers paid the annual payments under the 1966 and 1969 agreements to Donna May McClellan. This was formalized by May and his mother in a supplemental agreement dated December, 1974. The payments booked as investment were recorded as an asset in Antlers' general ledger. From 1975 to October 1984, Antlers made all of the payments due to Donna May McClellan under the 1966 and 1969 agreements.
 
 
 16
 In 1984, Security State Bank of Basin ("the Bank") sued May and another individual, Wayne Jones ("Jones"), on their personal guarantees of loans the Bank extended to two corporate entities, Round Bale Rail, Inc. and Park County Energy Products, Inc., owned by May and Jones for the purpose of manufacturing certain agricultural equipment. A judgment was entered on October 10, 1984, in favor of the Bank in the amount of $1,051,338.62. Jones thereafter filed bankruptcy. May, however, entered into a settlement negotiations with the Bank which led him to give the Bank a payment of $220,000.00 from Antlers' corporate funds, a promissory note from Antlers in the amount of $1,095,000.00 and a mortgage encumbering all of the property owned by Antlers. As part of the settlement, Antlers retained control over the agricultural equipment.
 
 
 17
 May incurred attorney's fees defending the lawsuit by the Bank. These attorney's fees were paid for May from the corporate funds of Antlers.
 
 
 18
 Upon discovery of the entry of the judgment in favor of the Bank against May and the subsequent settlement agreement which involved Antlers' corporate funds and assets, Appellants brought the instant action. Appellants alleged shareholder derivative claims under Fed.R.Civ.P. 23.1 for reallocation of corporate stock due to alleged misrepresentations and concealment by May in the 1974 merger of Antlers and 3M; claims of conversion and waste of corporate assets against May; and shareholder derivative claims against the Bank to cancel the mortgage encumbering all of the property owned by Antlers and to recover corporate funds received by the Bank from Antlers. Antlers and the Bank asserted counterclaims against Appellants for tortious interference of contract. May and MQM, Inc., the corporation formed during the instant action to hold May's shares in Antlers, also asserted counterclaims for breach of the covenant of good faith and fair dealing. During discovery, Appellants filed a second amended complaint which added a shareholder's derivative claim for equitable redemption by Antlers of its stock based on its payments to Donna May McClellan for her Antlers' shares.
 
 
 19
 Shortly before trial, the district court determined that the claims for reallocation of corporate stock due to alleged errors in the calculations used in the 1974 merger of 3M and Antlers were barred by the applicable statute of limitations. The case proceeded to trial before the district court on Appellants' remaining claims and the counterclaims. The bench trial lasted a total of 10 days. Thereafter, the district court entered findings of fact and conclusions of law. The findings were generally in favor of Appellants on their claims, except for the claim to cancel the mortgage of Antlers' property to the Bank. The district court also ruled in favor of Appellants on the counterclaims. In conformance with the district court's findings of fact and conclusions of law, Appellants submitted a proposed judgment. Subsequently, after reviewing Antlers' corporate records, Appellants filed a revised proposed judgment. This revised proposed judgment incorporated additional corporate expenditures by Antlers for May's attorney's fees in this action. Neither the proposed judgment nor the revised proposed judgment was entered by the district court.
 
 
 20
 May filed objections to the district court's findings of fact and conclusions of law and Antlers filed a motion to amend the findings of fact and conclusions of law. While the objections and motion to amend were under advisement, the district court approved, over the objection of Appellants, a partial settlement between Antlers, May and the Bank. Pursuant to the partial settlement agreement, Antlers transferred a property known as the "Seed Farm" to the Bank, May personally paid $90,000.00 to the Bank, the Bank released Antlers and May from their obligations and the Bank was dismissed with prejudice from the instant action.
 
 
 21
 Following the partial settlement, the parties submitted briefs regarding the effect of the settlement on the instant action. The parties also addressed issues of reallocation of stock and "double-dipping" by awarding damages both to the individual Appellants and Antlers' corporation. After the additional briefs were submitted, the district court issued its amended findings of fact and conclusions of law and entered judgment against May and in favor of each Appellant in the amount of $117,781.08, together with costs and post-judgment interest. The amended findings of fact and conclusions of law differed from the original findings of fact and conclusions of law in that the district court found that Appellants' equitable redemption claim was barred by the statute of limitations; Appellants were not entitled to recover the attorney's fees incurred in prosecuting the instant action; May's conduct damaged Antlers in the amount of $656,162.00; and Appellants were entitled to a pro rata share of the damages in the amount of $117,781.08 based upon their percentage of ownership of Antlers' stock. Thereafter, Appellants filed their notice of appeal.
 
 
 22
 On appeal, Appellants contend that (1) the district court erred in ruling that the equitable redemption derivative claim was barred by the statute of limitations; (2) the district court erred in ruling that this action was not a derivative suit, and therefore, Appellants were not entitled to an award of attorney's fees under Fed.R.Civ.P. 23.1; (3) the district court erred in not assessing damages to Antlers caused by May to include additional attorney's fees which he caused the corporation to pay to attorneys representing him in this case personally; (4) the district court erred in not assessing damages to Antlers to include interest from the time of each transaction; (5) the district court erred in granting to May, rather than to Antlers, the benefit of a post-trial settlement with the Bank which involved the transfer of corporate property in exchange for the release of May's liability to the Bank and (6) the district court erred in granting May a credit of $667,414.00 as the value of Round Bale Rail assets conveyed by May to Antlers.
 
 
 23
 Where, as here, a trial is to the court, the resolution of factual issues and conflicting evidence lies solely within the province of the district court. Raydon Exploration, Inc. v. Ladd, 902 F.2d 1496, 1499 (10th Cir.1990). The factual findings of the trial court are presumed correct and should not be set aside on appeal unless they are clearly erroneous. Id. A finding of fact is "clearly erroneous" if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made. Id. Conclusions of law by the district court are reviewed de novo. National Advertising Co. v. City & County of Denver, 912 F.2d 405, 408 (10th Cir.1990).
 
 
 24
 Initially, Appellants assign error to the district court's finding that their "equitable redemption" claim was barred by the statute of limitations. In the amended findings of fact and conclusions of law, the district court explained its ruling in part as follows:
 
 
 25
 Varying treatment of the shares on the corporate books has been heavily relied upon by the plaintiffs in support of [the equitable redemption] theory, but the evidence is not persuasive and simply reflects attempts by accountants to characterize the transactions for accounting purposes often without discussion with the affected parties or substantial research to the corporate records.
 
 
 26
 Aplt.App. at 702.
 
 
 27
 In their brief, Appellants challenge these findings of the district court. Appellants contend that their "effective redemption" claim was timely as it did not arise until Antlers' method of recording the payments to Donna May McClellan for her stock in the general ledger was changed by the corporate accountant on January 6, 1986. Prior to that time, the payments had been recorded as an investment. On January 6, 1986, the corporate accountant changed the records to reflect the payments as an adjustment to retained earnings. According to Appellants, this change in the corporate records was made in response to Appellants' request for an Antlers' tax return. Appellants contend that the only evidence as to how Antlers treated the payments to Donna May McClellan was its corporate records. Because there was no evidence in the record to overcome the entries in the corporate records, Appellants argue that the corporate records conclusively establish Antlers' ownership of the stock.
 
 
 28
 Having carefully reviewing the record, we find that the district court's findings in regard to the statute of limitations issue are not clearly erroneous. There is sufficient evidence that the parties and their predecessors knew or should have known by virtue of the investigations that took place at Antlers in the years prior to the merger of 3M and Antlers, that 3M was purchasing Donna May McClellan's interests in 3M and Antlers for the benefit of May. In addition, there is sufficient evidence to support the district court's finding that the parties understood and intended that the payments made by Antlers to Donna May McClellan, after the merger of 3M and Antlers, were to be additional compensation for May's services as ranch manager. Furthermore, there is adequate evidence in the record to support the district court's finding that the change in the corporate entries in the general ledger relied upon by Appellants to support their equitable redemption claim were merely "attempts by the accountants to characterize the transactions for accounting often without discussion with the affected parties or substantial research into the corporate records." Given the evidence in the record and the fact that the resolution of factual issues and conflicting evidence lies with the district court, Raydon, 902 F.2d at 1499, we find Appellants' assignment of error unavailing.
 
 
 29
 Appellants also argue that the district court erred in ruling that this action was not a shareholder derivative suit and therefore, Appellants were not entitled to an award of attorney's fees under Fed.R.Civ.P. 23.1. We disagree. Contrary to Appellants' arguments, the district court found that the instant case was a shareholder derivative suit. Notwithstanding this fact, the district court denied Appellants' request for attorney's fees stating that the primary relief sought, reallocation of stock, did not confer a benefit upon the corporation and that Appellants were not prevailing parties as to the reallocation issue. The district court further denied an attorney's fee award on the basis that it awarded a sum certain to Appellants rather than entering a judgment in favor of Antlers against May. We find that these findings were not clearly erroneous. Furthermore, we specifically find that the district court's decision denying an attorney's fee award because Appellants received a pro rata recovery of damages was appropriate. "[T]he general rule is that a pro rata recovery by the plaintiff-shareholder, absent substantial benefit to the corporation, precludes reimbursement for such shareholder's expense, unless such shareholder has created or protected a common fund for such shareholder and other innocent shareholders." Harry G. Henn & John R. Alexander, Laws of Corporations and Other Business Enterprises, § 373, p. 1098 (3d ed. 1986). See also id. at § 377, p. 1113 ("ordinarily there should be no reimbursement [of attorney's fees] where the recovery is only of the plaintiff shareholders' proportionate damages"). In the instant case, Appellants received a pro rata recovery of damages. They did not create nor did they protect a common fund for Appellants and other innocent shareholders. Moreover, the substantial benefit of this action derived to Appellants rather than Antlers. Thus, we find no error in the denial of an award of attorney's fee to Appellants.[1]
 
 
 30
 As to Appellants' claim of error concerning the additional attorney's fees, we decline to address the merits of such claim. The appellate court will not consider an issue raised for the first time on appeal. Hicks v. Rubber Gates Co., 928 F.2d 966, 970 (10th Cir.1991). Exceptions to this rule are rare and generally limited to cases where the jurisdiction of a court to hear a case is questioned or when the appellate court feels it must resolve a question of law to prevent a miscarriage of justice. Id. In the instant case, the issue of additional attorney's fees was not properly raised before the district court. No application or motion was ever filed by Appellants requesting the additional attorney's fees. Appellants simply included the additional attorney's fees in the revised proposed judgment submitted to the district court. The revised proposed judgment, however, was never entered. As the issue was not properly raised below and we find no basis to grant an exception to the general rule, we find Appellants waived the issue for purposes of appeal.
 
 
 31
 Appellants further challenge the district court's denial of prejudgment interest in regard to the conversion and corporate waste claims. Under Wyoming law, a prevailing party is entitled to recover prejudgment interest on those claims which are liquidated. Holst v. Guynn, 696 P.2d 632 (Wyo.1985). A liquidated claim is one which is readily computable by basic mathematical calculation. Id. In the instant case, the district court, in denying prejudgment interest, stated that "the bulk of the claims asserted by plaintiffs were not liquidated." However, from this statement, it appears the district court recognized that at least a portion of Appellants' claims were liquidated. Since we cannot adequately determine from the record which claims the district court concluded were unliquidated, we find it necessary to remand this action to the district court to make the appropriate findings as to which claims of Appellants are liquidated and unliquidated. For those claims which are liquidated, we find that an award of prejudgment interest is appropriate.
 
 
 32
 Appellants further claim the district court erred in granting May the benefit of Antlers' post-trial settlement with the Bank by assessing damages against May for the value of the "Seed Farm" rather than the entire mortgage debt incurred by Antlers. We, however, find that the district court's assessment of damages was not clearly erroneous. In the post-trial settlement, the Bank agreed to release Antlers' loan debt of $1,700,000.00 plus interest in exchange for the "Seed Farm." By entering into the post-trial settlement, Antlers mitigated its damages. Having mitigated its damages, Antlers was only entitled to receive damages for its actual loss. Thayer v. Smith, 380 P.2d 852, 854 (Wyo.1963) ("where the offended party has succeeded in reducing the damages suffered, his claim must be reduced accordingly"). That loss was the value of the Seed Farm conveyed to the Bank. Thus, damages against May were properly assessed at the value of the "Seed Farm."
 
 
 33
 Appellants' remaining claim of error concerns the district court's valuation of the Round Bale Rail assets. Appellants contend the valuation had no factual basis and was improperly speculative. However, after carefully examining the record, we find that the district court's valuation of the Round Bale Rail assets in the amount of $667,414.00 was amply supported by the record and was not clearly erroneous.
 
 
 34
 Based upon the foregoing, the district court's amended findings of fact and conclusions of law and judgment are AFFIRMED in part and REVERSED in part. This action is REMANDED to the district court to determine which claims are entitled to prejudgment interest under Wyoming law.
 
 
 
 *
 The Honorable Michael Burrage, United States District Court for the Eastern, Northern and Western Districts of Oklahoma, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir.R. 36.3
 
 
 [1]
 We find the two cases cited by Appellants, Lawson v. Baltimore Paint & Chemical Corp., 347 F.Supp. 967, 984 (D.Md.1972), and Irwin v. West End Development Co., 342 F.Supp. 687, 702 (D.Colo.1972), are distinguishable. Both cases involve a recovery of damages by a corporation rather than a pro rata recovery of damages by shareholders